MAY, Plaintiff-Appellant, v. SKELLEY OIL COMPANY, and others, Defendants-Respondents and Third-Party Plaintiffs: INDIAN HEAD TRUCK LINE, INC., Third-Party Defendant-Respondent and Appellant.†

*Nos. 75–670, 75–885. Argued February 6, 1978.—Decided April 5, 1978.*
(Also reported in 264 N. W. 2d 574.)

† Motion for rehearing denied, without costs, on June 30, 1978.

For plaintiff-appellant there was a brief by *Panos, Samster & Domnitz*, attorneys, and *Timothy J. Aiken*, of counsel, all of Milwaukee, with oral argument by *Mr. Aiken.*

For defendants-respondents and third-party plaintiffs there was a brief by *George W. Greene, Donald M. Lieb* and *Prosser, Wiedabach & Quale, S. C.*, and oral argument by *William P. Croke*, all of Milwaukee.

For third-party defendant-respondent and appellant there were briefs by *Kurt H. Frauen, Terry E. Johnson*, and *Borgelt, Powell, Peterson & Frauen, S. C.*, and oral argument by *Kurt H. Frauen*, all of Milwaukee.

*ABRAHAMSON, J.* Clifford W. May, an employee of Indian Head Truck Line, Inc., was injured when he fell from the top of his petroleum truck which was being loaded with petroleum at the Milwaukee Terminal. The Milwaukee Terminal is owned and operated by Skelley Oil Company, Kerr-McGee, Conoco Inc., Continental Oil Company and Sun Oil of Pennsylvania (hereinafter collectively referred to as Continental).

May initiated an action against Continental based on the allegedly unsafe conditions of the Terminal. Continental brought a third-party action against Indian Head, alleging that the truck had not been properly maintained and that Indian Head had agreed to indemnify Continental for injuries to Indian Head's employees not caused solely by Continental's negligence.

The actions were tried together. The jury assessed May's damages at $147,000. It apportioned the causal negligence as follows: May, 45 percent; Continental, 45 percent; Indian Head, 10 percent. Because the law of negligence in effect at the time of May's injury denied recovery to a plaintiff whose negligence was equal to or greater than the negligence of each defendant, the court ordered judgment dismissing May's complaint.[1] The court further ordered judgment granting Continental indemnification from Indian Head in the amount of Continental's defense expenses, stipulated in the amount of $9,000.00. May and Indian Head each appealed. The appeals from the judgments were consolidated for briefing, argument and decision. We reverse both judgments.

[1] Sec. 895.045, Stats., 1969:

"Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

## I.

October 8, 1970, was wet and rainy, and at night when the accident occurred, the wind was gusting. May pulled his truck into the Milwaukee Terminal, climbed onto the top of the truck to open the dome covers, a series of large vents and then climbed back down to hook up the hoses and load petrol into the tanks. This method of loading petrol is called bottom-loading because the hoses through which the petrol passes are located near the ground and are attached by the trucker to the bottom side of the tanker. To avoid danger of explosion, the tanker is vented during the loading process so that air can escape while petrol is entering the tanks. Although May's tanker was equipped with small top vents which could be opened by means of levers located at the bottom side of the tanker, May was required by a rule of the Milwaukee Terminal to climb to the top of the truck to open the dome covers.

After May had completed loading the petrol, he went back onto the top of the truck, closed three dome covers without mishap, kicked the last dome cover closed, and then fell to the concrete about 12 feet below, injuring his back. May testified that he was not certain how he fell, but that he was suddenly "airborne."

May's cause of action against Continental was predicated on the theory that Continental was negligent in failing to maintain the Terminal in as safe a condition as the nature of the premises permit. May alleged that Continental failed to provide safety measures for the truckers, such as adequate lighting, platforms, handles, railings or similar equipment to be held or grasped by the truckers.

Continental, in turn, claimed that May's injury had been caused by Indian Head's negligence in failing to maintain its trucks in a reasonably safe condition.

The trial court determined that Indian Head could be found negligent only if its failure to maintain the non-skid paint surface on the top of May's tanker constituted a violation of the safe place statute. Based upon this determination, the following special verdict question was presented to the jury:

"At and just prior to the accident was the third-party defendant Indian Head Truck Lines, Inc., negligent with respect to *maintaining* the top of the tanker-trailer as safe as the nature of the place reasonably permitted." (Emphasis added.)[2]

The testimony adduced at trial established that a sand painted non-skid surface has a tendency to wear off and that it must be refinished or refurbished periodically. May's statements as to the condition of the paint sur-

[2] The special verdict question and the relevant instructions imposed on Indian Head the higher duty of care applicable under the safe place statute. Sec. 101.06, Stats. See *Krause v. Veterans Foreign Wars Post No. 6498*, 9 Wis.2d 547, 554, 101 N.W.2d 645 (1960) for a similar special verdict question. Whether the safe place statute is applicable is not before us.

During the course of counsels' objections to the instructions the trial court stated that although it was suggested by a witness that an expanded metal surface would provide a safe non-skid surface, the trial court believed it was "established that that method of sand paint was an acceptable method of developing a non-skid surface so the sole issue will be whether that was worn down sufficiently to provide an unsafe place." An expert witness specifically testified that the sand painted surface was acceptable and an accepted form of non-skid surface where oil was involved and that the tanker surface was constructed in the manner usual in the industry and was not less safe than that which was prevalent in the industry. The president of Indian Head testified that tanker tops were given either an expanded metal surface or a sand painted surface, as either was considered an acceptable method of avoiding the danger of slipping. In the trial court's opinion and ours, there was no evidence from which the jury could have concluded that the sand painted surface was less safe than any alternative method of dealing with the danger of slipping.

face on the night of October 8 were conflicting. At one point May said that the tanker from which he fell "did not have a good walking surface on top of it." On the other hand, May also testified that the surface was not necessarily in "poor condition," and that walking on the non-skid surface was better than "walking on a clean painted trailer." May also stated that the drivers were responsible for reporting any defect in the paint surface and that when such a complaint was made, the problem "was corrected immediately."

## II.

May and Indian Head contend that the evidence does not support the jury's finding that Indian Head improperly maintained the non-skid paint surface on the top of May's trailer. We reiterate the rule which this court must follow in reviewing the record to determine if the jury verdict is supported by the evidence: A jury verdict will not be upset if there is any credible evidence which under any reasonable view fairly admits of an inference supporting the findings. The evidence is to be viewed in the light most favorable to the verdict. A jury cannot base its findings on conjecture and speculation.[3] Even if we assume that a jury could find from the evidence presented at trial that the paint on the top of the tanker had worn down, making the tanker less safe than the nature of the place reasonably permitted, this finding alone would not afford sufficient basis for a conclusion that Indian Head was causally negligent. Indian Head's liability for a failure to repair or maintain the paint

[3] *Zweifel v. Milw. Auto. Mut. Ins. Co.*, 28 Wis.2d 249, 254, 137 N.W.2d 6 (1965); *Maus v. Cook*, 15 Wis.2d 203, 206, 112 N.W.2d 589 (1961); *Rodenkirch v. Johnson*, 9 Wis.2d 245, 248, 101 N.W.2d 83 (1960).

surface must further be predicated upon proof that prior to the accident Indian Head had actual or constructive notice that the surface was defective.[4]

There is no evidence that Indian Head had actual notice that the paint had worn down. May was not the only driver to use this truck, yet no testimony was presented to the effect that May or any other driver or employee of Indian Head had observed or had reported to Indian Head a defect in the painted surface. The evidence was that the trucks were routinely checked by employees at Indian Head's terminal, as well as by the truckers, and that any problems reported were corrected immediately.

Nor was there evidence to support a finding that Indian Head had constructive notice that the paint was worn down. Constructive notice is neither notice nor knowledge. It is "the mere trademark of a fiction." In order to promote sound policy, the legal system attributes notice of a fact to an owner or employer and treats it as if it had actual notice or knowledge of the fact, although in truth it did not.[5]

The general rule is that constructive notice is chargeable only where the hazard has existed for a sufficient length of time to allow the vigilant owner or employer the opportunity to discover and remedy the situation.[6]

---

[4] The safe place statute does not impose an absolute duty on Indian Head so as to make it an insurer of the safety of the premises so far as repair or maintenance is concerned. *Low v. Siewert,* 54 Wis.2d 251, 253, 195 N.W.2d 451 (1972); *Strack v. Great A & P Tea Co.,* 35 Wis.2d 51, 54, 150 N.W.2d 361 (1967); *Turk v. H. C. Prange Co.,* 18 Wis.2d 547, 559, 561, 119 N.W.2d 365 (1963).

[5] *Schoedel v. State Bank of Newburg,* 245 Wis. 74, 76, 13 N.W.2d 534 (1944); *Uhrman v. Cutler-Hammer,* 2 Wis.2d 71, 75, 85 N.W.2d 772 (1957); *Turk v. H. C. Prange Co.,* 18 Wis.2d 547, 561, 119 N.W.2d 365 (1963); *Merriman v. Cash-Way, Inc.,* 35 Wis.2d 112, 115, 116, 150 N.W.2d 472 (1967).

[6] There was no liability in the following cases where there was no evidence as to the length of time the condition existed:

The length of time viewed as sufficient varies according to the nature of the business, the nature of the defect, and the public policy involved.[7]

In the case at bar, however, even if the jury believed that the paint had worn down, there was no evidence from which it could determine the length of time that the painted surface had been defective. Thus there was no

---

*Lundgren v. Gimbel Bros.*, 191 Wis. 521, 210 N.W. 678 (1927) (no evidence how long slippery substance had existed); *Reiher v. Mandernack*, 234 Wis. 568, 291 N.W. 758 (1940) (no evidence how long a spot of water existed on bowling alley); *Dierkes v. White Paving Co.*, 229 Wis. 660, 283 N.W. 446 (1939) (no evidence how long dangerously small plank had rested over excavation); *Boutin v. Cardinal Theatre Co.*, 267 Wis. 199, 64 N.W.2d 848 (1954) (no evidence when theatre seat was rendered defective); *Shoemaker v. Marc's Big Boy*, 51 Wis.2d 611, 615, 187 N.W.2d 815 (1971) (no evidence how long slippery substance had been on restaurant floor); *Rosenthal v. Farmers Store Co.*, 10 Wis.2d 224, 102 N.W. 2d 222 (1960) (no evidence how long black wad was on the floor); *Sposito v. Zeitz*, 23 Wis.2d 159, 127 N.W.2d 43 (1964) (no evidence that defective rung on ladder was discoverable); *Merriman v. Cash-Way, Inc.*, 35 Wis.2d 112, 150 N.W.2d 472 (1967) (no evidence how long ice patch in doorway existed). *Compare Rudzinski v. Warner Theatres*, 16 Wis.2d 241, 114 N.W.2d 466 (1962) where the jury could determine liability in the absence of evidence of length of time wet spots were on the floor, when evidence showed the wet spots were readily observable by employee seated near the defect.

[7] When an unsafe condition, although temporary or transitory, arises out of the course of conduct of the owner or operator of a premises or may reasonably be expected from his method of operation, a much shorter period of time, and possibly no appreciable period of time under some circumstances, need exist to constitute constructive notice. In *Strack v. Great A & P Tea Co.*, 35 Wis.2d 51, 150 N.W.2d 361 (1967), and in *Steinhorst v. H. C. Prange Co.*, 48 Wis.2d 679, 180 N.W.2d 725 (1970), we held that the owner of a retail business was conducting the business in such a manner that the defect or dangerous condition occasioned by customers should have been anticipated, and in such cases the owner was charged with notice when only a very short period of time had elapsed.

basis upon which the jury could have predicated a conclusion that the vigilant owner would have discovered the defect and repaired or remedied it. Under the circumstances of this case, it cannot be said that public policy requires that Indian Head be held to have constructive notice of the defect.

Viewing the evidence in the light most favorable to the verdict, we conclude that there was no credible evidence which under any reasonable view fairly admits of an inference supporting the finding of causal negligence on the part of Indian Head in maintaining the paint surface. The jury's apportionment of negligence is therefore set aside, and the cause is remanded for a new trial for a jury determination of the negligence attributable to May and Continental.[8]

This case is one of many cases which have come before this court involving multiple party tortfeasors. May urges the Court to re-examine its interpretation of the comparative negligence statute. The majority of the court has become convinced that comparing the negligence of the individual plaintiff to that of each individual tortfeasor—rather than comparing the negligence of the individual plaintiff to that of the combined negligence of the several tortfeasors who have collectively contributed to plaintiff's injuries—leads to harsh and unfair results; the majority has further concluded that this rule of comparative negligence, a court-made doctrine, can be changed by court decision. However, in view of our holding that Indian Head is not negligent, the majority does not believe that the case at bar is the ap-

---

[8] Justice Day and the author of this opinion would have the court apply the *Powers* rule, *Powers v. Allstate Ins. Co.*, 10 Wis. 2d 78, 102 N.W.2d 393 (1960), to the apportionment of negligence between the parties, with a proper option for a new trial in the event the apportionment is not accepted. *Gross v. Denow*, 81 Wis. 2d 129, 140, 260 N.W.2d 36 (1977) (Abrahamson, J. dissenting).

propriate one in which to structure a change in the rule of comparative negligence in cases involving multiple defendants.[9]

## III.

Indian Head appeals from the judgment holding it liable to Continental pursuant to their indemnification agreement. In consideration of being granted the privilege of access to the Milwaukee Terminal, Indian Head entered into an agreement, drafted by Continental, by which Indian Head agreed to indemnify Continental against certain suits, claims and expenses. The indemnity agreement provides, in pertinent part, as follows:

". . . we (Indian Head) hereby agree to protect, defend, indemnify, and hold harmless Continental Oil Company . . . against any and all suits, claims, and expense (including cost of defense) for (1) . . . injury to . . . our employees . . . while on or adjacent to the terminal premises, except any such injury . . . caused solely by the negligent acts and/or omissions of Continental, its agents and employees, and (2) all other . . . injury to . . . persons caused by or resulting from our negligent acts and/or omissions . . ."

Continental sought to recover from Indian Head the costs it had incurred in defending itself against May's claim, and the parties agreed that the trial court could construe the indemnity agreement as a matter of law.

The question before the trial court was whether Indian Head's agreement to indemnify Continental, except for injuries caused solely by Continental's negligence, meant that Indian Head would pay the total costs associated with an injury caused by the negligence of both Indian Head and Continental. The trial court interpreted the

---

[9] Justice Day, Justice Callow and the author of this opinion believe this case is an opportune time for the court to make the change in the rule.

agreement to hold Indian Head liable for all of Continental's defense costs because May's injury was not caused solely by Continental's negligence.

In light of our decision that Indian Head was not causally negligent, we need not review the correctness of the trial court's construction of the agreement. Continental now becomes the sole tortfeasor, and Indian Head has no liability for costs under the indemnity agreement. Accordingly, the judgment against Indian Head in the amount of $9,000.00 representing defense costs is reversed.

*By the Court.*—Judgments reversed; case No. 75–670 remanded for a new trial on the issue of negligence as between May and Continental, et al., defendants-respondents.