Mary DELVAUX, now Mary Karl, individually and as Special Administratrix of the Estate of Steven Delvaux, and Candy Ann Delvaux and Melissa Delvaux, by their Guardian ad Litem, Carl W. Kuehne, Plaintiffs-Appellants-Petitioners,

v.

Leon VANDEN LANGENBERG, d/b/a Van's Bar, The Shelby Mutual Insurance Company of Shelby, Ohio, Thomas Collins, Robert J. Collins, Phyllis J. Collins and the Hanover Insurance Company, Defendants-Respondents.

Supreme Court

*No. 84–1404. Argued April 1, 1986.—Decided June 4, 1986.*

(Also reported in 387 N.W.2d 751.)

For the plaintiffs-appellants-petitioners there was a brief and oral argument by *Carl W. Kuehne,* Green Bay.

For the defendants-respondents, Leon Vanden Langenberg, d/b/a Van's Bar, and Shelby Mutual Insurance Company of Shelby, Ohio, there was a brief by *J. Robert Kaftan, Lise Lotte Gammeltoft* and *Kaftan, Kaftan, Van Egeren, Ostrow, Gilson, Geimer & Gammeltoft, S.C.,* Green Bay, and oral argument by *J. Robert Kaftan.*

For the defendants-respondents, Robert J. Collins, Phyllis J. Collins and Hanover Insurance Company, there was a brief by *Peter J. Hickey, Bruce B. Deadman* and *Everson, Whitney, Everson & Brehm, S.C.,* Green Bay, and oral argument by *Mr. Hickey.*

LOUIS J. CECI, J.   This is a review of an unpublished decision of the court of appeals dated May 7, 1985. The court of appeals affirmed in part and reversed in part a judgment of the circuit court for Brown county, Alexander R. Grant, circuit judge, which dismissed the plaintiffs' wrongful death claim following a jury trial. The court of appeals remanded the cause to the circuit court with directions to retry the case on the issue of liability. We affirm the court of appeals.

Five substantive issues are raised on this appeal. They are:

(1) Whether this court should adopt pure comparative negligence after a reexamination of our comparative negligence statute, sec. 895.045, Stats.; or, alternatively, whether this court should permit comparison of a plaintiff's contributory negligence with the combined negligence of all defendant tortfeasors whose negligence was a substantial factor in causing plaintiff's harm;

(2) Whether a jury should be informed of the ultimate effect of its verdict, given the existing comparative negligence law of this jurisdiction;

(3) Whether the duty of a proprietor of a tavern to exercise ordinary care for the safety of his patrons extends beyond the premises of the tavern;

(4) Whether our holding in *Sorensen v. Jarvis,* 119 Wis. 2d 627, 350 N.W.2d 108 (1984), should be applied retroactively to the facts of this case; and

(5) Whether the contributory negligence of a plaintiff's decedent is attributed to the decedent's beneficiaries in a wrongful death action, given the interrelationship of sec. 895.04 —the wrongful death statute—and sec. 895.045.

We hold that this court's prior decisions restrain us from adopting a "pure" form of comparative negligence and that prior interpretation of sec. 895.045, Stats., dictates that a plaintiff's contributory negligence be compared with the negligence of each defendant individually. We also hold that a jury should not be instructed about the ultimate effect of its verdict in comparative negligence cases; that a proprietor's duty of ordinary care for the safety of patrons does not extend beyond his or her place of business; that the *Soren-*

467

*sen* holding has no retroactive effect on this case; and that a decedent's contributory negligence is attributable to the beneficiaries for purposes of a wrongful death action.

The plaintiffs' decedent, Steven Delvaux, was pronounced dead on March 28, 1978, after he was involved in a fight early in the morning of March 27, 1978. The fight occurred outside a tavern in Green Bay, Wisconsin. On the evening of March 26, 1978, Delvaux, his wife Mary Delvaux, and his brother Jeff Delvaux went to Van's Bar, owned and operated by defendant Leon Vanden Langenberg. Also in the bar that evening was defendant Thomas Collins, a minor. The record is unclear whether Vanden Langenberg ever asked Collins for proof of his age, although Collins admitted during testimony that he carried a false identification card which showed him to be of majority age. In any event, Collins was present in Van's Bar during the evening in question to practice shooting pool, as he was a member of a pool team sponsored by Van's Bar. Collins' parents apparently were aware of his frequenting Van's Bar to shoot pool.

During the course of the evening, Steven and Jeff Delvaux entered into a series of pool-shooting matches with Collins, who would alternately team up with one of several of his friends. An argument eventually developed among Collins and the Delvauxs, apparently due in part to Jeff Delvaux's frustration over his lack of success in shooting pool that evening. Jeff Delvaux began to use abusive language. He also began to abuse Vanden Langenberg's pool table equipment, and Collins told him to stop the maltreatment of the equipment. Steven Delvaux responded by pushing Collins into a jukebox, at which time Vanden Langenberg in-

terceded by separating Collins from the Delvauxs and by having them sit at opposite ends of the bar. The Delvauxs and Collins continued to verbally abuse one another. The Delvauxs finished what they were drinking and left Van's Bar. Vanden Langenberg insisted that Collins remain at the bar when the Delvauxs left because he did not want Collins and the Delvauxs to get into a fight as the Delvauxs were leaving. Collins, who had consumed about ten to fifteen glasses of beer during his four-and-one-half-hour stay at Van's Bar, left about thirty-five to forty minutes thereafter and went to his home. He then related the evening's events to his older brother, and the two decided to go back to Van's Bar to look for the Delvauxs.

As the Collins brothers were driving and looking for the Delvauxs, they spotted Jeff Delvaux in front of the Dew Drop Inn, a tavern several blocks from Van's Bar. The testimony regarding what happened next is contradictory. Collins testified at trial that his brother dropped him off and that he (Tom) and Jeff Delvaux began to fight. While he was fighting with Jeff Delvaux, Collins testified that he saw Steven Delvaux come out of the Dew Drop Inn and approach Collins in a threatening way. Collins stated that he threw Jeff Delvaux to the ground and proceed to hit Steven twice on the face. When Steven fell to the ground, Tom proceeded to kick him in the head.

Jeff Delvaux also testified about the fighting incident at the Dew Drop Inn. He stated that it would have been impossible for Collins to have killed Steven Delvaux because he (Jeff) was lying on top of Collins at the moment when Collins purportedly was hitting and kicking Steven. Jeff also testified that, while lying on top of Collins as the two wrestled, he heard his brother

Steven yell for help and that when he looked up, he saw two pairs of legs running away from where Steven was then lying.

Steven Delvaux died as a result of a cerebral hemorrhage caused by the beating he received in the fight outside the Dew Drop Inn. In the ensuing wrongful death action, the plaintiffs alleged that Vanden Langenberg was negligent in selling intoxicating beverages to a minor and that he breached his duty as a tavern owner to protect his patron from injury from other patrons. The plaintiffs further alleged that defendants Robert and Phyllis Collins were negligent in the supervision of their minor son Thomas and that Thomas Collins intentionally struck and kicked Delvaux.[1]

The special verdict submitted to the jury was in two parts. The first two questions concerned Collins' intentional conduct and asked the jury whether Collins had committed a battery on Delvaux. The remaining questions concerned Delvaux's contributory negligence

---

[1] The complaint initially alleged that Collins was negligent in striking and kicking Delvaux. Robert and Phyllis Collins' homeowner's insurer, the Hanover Insurance Company, moved the circuit court for a separate trial on the issue of coverage to determine whether Collins' acts were intentional and, therefore, outside the coverage of the homeowner's policy. Judge Robert Parins, who was initially assigned to this case, determined that Collins' acts were intentional. Judge Parins dismissed all claims against Hanover as insurer of Thomas Collins, but Hanover remained in the action as insurer of Collins' parents. The plaintiffs subsequently amended their complaint accordingly.

Because Collins' conduct was deemed intentional, the special verdict did not compare Collins' fault with the allegedly negligent conduct of the other defendants.

with respect to his own safety and the negligence of Vanden Langenberg and Collins' parents.[2]

[2] The special verdict was formulated as follows:

"We, the jury, for our verdict, answer these questions as follows:

"*QUESTION NO. 1:* On March 27, 1978, did the defendant Thomas Collins commit a battery on the person of Steven Delvaux?

"ANSWER: _____No_____

"*QUESTION NO. 2:* If you answer 'Yes' to Question No. 1, then answer this question:

"Was such a battery a cause of the death of Steven Delvaux?

"ANSWER: _____

"*QUESTION NO. 3:* At the time and place in question, was the defendant Leo Vandenlangenberg negligent with respect to providing protection to the members of the public in attendance at his place of business at 128 South Broadway, Green Bay, Wisconsin?

"ANSWER: _____Yes_____

"*QUESTION NO. 4:* If you answer 'Yes' to Question No. 3, then answer this question:

"Was such negligence a cause of the death of Steven Delvaux?

"ANSWER: _____Yes_____

"*QUESTION NO. 5:* At the time and place in question, were the defendants Robert and Phyllis Collins negligent in supervising their son Thomas Collins?

"ANSWER: _____Yes_____

"*QUESTION NO. 6:* If you answer 'Yes' to Question No. 5, then answer this question:

"Was such negligence a cause of the death of Steven Delvaux?

"ANSWER: _____Yes_____

"*QUESTION NO. 7:* At the time and place in question was Steven Delvaux negligent with respect to his own safety?

"ANSWER: _____Yes_____

"*QUESTION NO. 8:* If you answer 'Yes' to Question No. 7, then answer this question:

"Was such negligence a cause of his death?

The jury found that Collins did not commit a battery upon Delvaux.[3] It also found Delvaux, Vanden

"ANSWER: _____ Yes _____

*"QUESTION NO. 9:* If you answered 'Yes' to two or more of Questions 4, 6, and 8, then answer this question:

"Assuming the total negligence which caused the death of Steven Delvaux to be 100 percent, what percent of the total negligence do you attribute to:

"a) Leo Vandenlangenberg d/b/a Van's Bar? (Do not answer if you have answered Question No. 4 'No.') ___ 20 ___ %

"b) Robert and Phyllis Collins? (Do not answer if you have answered Question No. 6 'No.') ___ 35 ___ %

"c) Steven Delvaux? (Do not answer if you have answered Question No. 8 'No.' ___ 45 ___ %

"TOTAL ___ 100 ___ %

*"QUESTION NO. 10:* Regardless of how you have answered the previous questions, answer this question:

"a) What sum of money will fairly and reasonably compensate the plaintiff Mary Delvaux (Karl) for loss of society and companionship of her deceased husband, Steven Delvaux?

"ANSWER: $ ___ 6,400.00 ___

"b) What sum of money will fairly and reasonably compensate the estate of Steven Delvaux for:

"1) Pecuniary loss? $ ___ 220,000.00 ___

"2) Funeral expenses? $ ___ 2,414.00 ___

"3) Hospital and medical expenses?
$ ___ 1,303.60 ___

"Dated this 11th day of January, 1984, at Green Bay, Wisconsin."

[3] The jury apparently believed the testimony of Jeff Delvaux that it would have been impossible for Collins to have committed the battery on Steven Delvaux. During oral argument before this court, counsel for Vanden Langenberg suggested that Collins was willing to take the "rap" for the attack on Delvaux because Collins did not want to subject his brother, an adult, to criminal justice sanctions. As it was, Collins was convicted of homicide by reckless

Langenberg, and Collins' parents all causally negligent, in the following breakdown: Delvaux—45 percent; Vanden Langenberg—20 percent; Collins' parents—35 percent. The trial court denied plaintiffs' motions after verdict and dismissed the wrongful death complaint.

The court of appeals affirmed the dismissal in favor of Vanden Langenberg because under the law as it existed at the time of the fight and throughout the course of the trial, there could be no recovery under the facts of this case against the bar owner. The court of appeals also held that the trial court did not err in refusing to instruct the jury on the effect of the existing comparative negligence law, that the plaintiffs should not be granted judgment in the amount of fifty-five percent of their damages, and that Delvaux's negligence should not be compared with the combined negligence of the defendants.

The court of appeals concluded, however, that the jury's finding of no negligent or intentional conduct on Collins' part was inconsistent with its finding of negligent supervision on the part of Robert and Phyllis Collins. The court accordingly reversed the judgment in favor of Collins and his parents and remanded for a new trial limited solely to the question of liability on the part of Delvaux, Collins, and Collins' parents. The

conduct, pursuant to sec. 940.06, Stats., prior to the trial for any civil liability on his part.

Counsel for plaintiffs at oral argument stated that plaintiffs did not add Collins' brother, Jayme Collins, to the complaint as a defendant and allege that Jayme was the attacker of Delvaux because Thomas Collins had always admitted to the attack when questioned. The plaintiffs therefore had no reason to suspect Jayme Collins for the attack.

remand for a new trial was not raised by the plaintiffs as an issue for review. We therefore limit our discussion to the substantive issues listed above.

## I.

The plaintiffs first argue that this jurisdiction should adopt a "pure" form of comparative negligence. Under such a rule, a plaintiff's recovery for negligent harm sustained would be only reduced—not barred—in proportion to the percentage of his or her causal contributory negligence. This court expressly considered such a proposition in *Vincent v. Pabst Brewing Co.*, 47 Wis. 2d 120, 177 N.W.2d 513 (1970). We decline to change our position from that case.

In *Vincent* we considered the impact of sec. 895.045, Stats. 1969, on this court's ability to judicially adopt a pure form of comparative negligence. The present version of that statute[4] reads as follows:

> "**895.045 Contributory negligence.** Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

---

[4] An amendment to sec. 895.045 after the *Vincent* decision does not affect our *Vincent* analysis.

■
While acknowledging that the body of comparative negligence law is born of the common law, this court intimated in *Vincent* that the growth and logical development of comparative negligence law with respect to judicial embracement of a pure form of comparative negligence has been legislatively preempted by the enactment of sec. 895.045, Stats. *Vincent,* 47 Wis. 2d at 127. Paraphrasing language from the *Vincent* decision, the natural inference to be drawn from the present language of sec. 895.045 is that if a plaintiff's negligence is greater than the negligence of the party against whom recovery is sought, then the plaintiff's recovery is denied. " 'The full scope of [a pure comparative negligence] rule could only be attained by amending the statute to remove [the] bar [to recovery].' " *Id.* (quoting *Lawver v. Park Falls,* 35 Wis. 2d 308, 316, 151 N.W.2d 68 (1967) (Hallows, J., concurring)).

In fact, the contributory negligence statute was amended following the *Vincent* decision. *See,* 1971 Wis. Laws 47. Under the revision, a plaintiff's contributory negligence could be found to be equal to the negligence of a defendant and plaintiff's recovery would not be barred. Section 895.045, Stats. Although representing an improvement over the former language for plaintiffs generally, the present language of sec. 895.045 still represents at best a political compromise. *See, Vincent,* 47 Wis. 2d at 125 (citing Prosser, *Comparative Negligence,* 51 Mich. L. Rev. 465, 494 (1953)).

We note that the interpretation of a statute is a question of law. This court decides questions of law without deference to the decisions of lower courts. *Ball*

*v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984). However,

> "[w]here a law passed by the legislature has been construed by the courts, legislative acquiescence in or refusal to pass a measure that would defeat the courts' construction is not an equivocal act. The legislature is presumed to know that in absence of its changing the law, the construction put upon it by the courts will remain unchanged; for the principle of the courts' decision—legislative intent—is a historical fact and, hence, unchanging. Thus, when the legislature acquiesces or refuses to change the law, it has acknowledged that the courts' interpretation of legislative intent is correct. This being so, however, the courts are henceforth constrained not to alter their construction; having correctly determined legislative intent, they have fulfilled their function." *Zimmerman v. Wisconsin Electric Power Co.,* 38 Wis. 2d 626, 633–34, 157 N.W.2d 648 (1968).

In this case there has been nothing to suggest that this court has incorrectly construed the comparative negligence statute or incorrectly determined legislative intent.

We must presume that our interpretation of sec. 895.045, Stats., in *Vincent* correctly ascertained the legislative intent embodied in that statute. While not relinquishing our inherent authority to change matters of common law,[5] we noted in *Vincent* that the legis-

---

[5] This court has the inherent authority to modify its decisions which are based on the common law where the common law rule no longer promotes social policy. *E.g., Olsen v. Copeland,* 90 Wis. 2d 483, 488, 280 N.W.2d 178 (1979); *Shockley v. Prier,* 66 Wis. 2d 394,

lature may be better equipped to adopt a pure form of comparative negligence. *Vincent,* 47 Wis. 2d at 130. *See also, Reiter v. Dyken,* 95 Wis. 2d 461, 474, 290 N.W.2d 510 (1980).

Plaintiffs alternatively argue that if this court does not adopt pure comparative negligence, then it should at least adopt the concept that a plaintiff's negligence be compared with the combined negligence of all causally negligent defendants, rather than with each defendant individually. We find that our prior decisions and interpretation of sec. 895.045, Stats., are correct, and, therefore, we decline the suggested change.

This court previously has considered the position propounded by the plaintiffs. However, in *Schwenn v. Loraine Hotel Co.,* 14 Wis. 2d 601, 111 N.W.2d 495 (1961), we held that sec. 331.045, Stats. 1960 (later renumbered sec. 895.045), dictated that "the comparison of negligence in a multiple-defendant case is required to be between the plaintiff and the individual defendants." *Id.* at 609–10. *See also, Soczka v. Rechner,* 73 Wis. 2d 157, 164, 242 N.W.2d 910 (1976); *Mariuzza v. Kenower,* 68 Wis. 2d 321, 325–26, 228 N.W.2d 702 (1975); and *Walker v. Kroger Grocery & Baking Co.,* 214 Wis. 519, 252 N.W. 721 (1934).

In *May v. Skelley Oil Co.,* 83 Wis. 2d 30, 264 N.W.2d 574 (1978), this court noted its ability to change the court-created doctrine of comparative negligence and indicated its willingness to reexamine its interpretation of the comparative negligence statute. A majority of the court was "convinced that comparing the negli-

397, 225 N.W.2d 495 (1975); *Lupie v. Hartzheim,* 54 Wis. 2d 415, 418, 195 N.W.2d 461 (1972).

gence of the individual plaintiff to that of each individual tortfeasor . . . leads to harsh and unfair results . . . ." *Id.* at 38. However, the court decided to wait until a case with a more propitious fact situation was before the court before it would structure a change in the combined comparison rule. *Id.* at 38–39.

The willingness to alter the combined comparison rule in favor of an individual comparison rule was short-lived. In *Reiter v. Dyken,* 95 Wis. 2d 461, the majority of the court retreated from the dicta expressed in *May* and determined that the construction of the comparative negligence statute was stated in *Schwenn* was based on the intent of the legislature. *Reiter,* 95 Wis. 2d at 470, 474. We reiterated our belief that the legislature could not have intended a necessary result of the combined comparison rule, whereby a plaintiff would be permitted to recover "from a defendant less negligent than himself." *Id.* at 470.

We then stated the rule from *Zimmerman* that when the legislature has refused to change a law which this court has interpreted, the legislature in effect acknowledges that the court's interpretation of legislative intent is correct, and this court must consider itself constrained from altering the construction of the statute. *Zimmerman,* 38 Wis. 2d at 633–34. "Having authority construed a statute, well-established principles of judicial decision-making require that the chosen construction be maintained unless and until the legislature either amends or repeals the statute." *Reiter,* 95 Wis. 2d at 470. Because the legislature neither amended the statute for purposes relevant to the *Reiter* decision nor repealed sec. 895.045, Stats., this court felt constrained to abide by the construction it had given the comparative negligence statute since *Walker v.*

*Kroger Grocery & Baking Co.,* 214 Wis. at 533–37. However, we also noted that to the extent the contributory negligence doctrine still exists in this state, it is subject to the inherent power of this court to reconsider matters of its own making. *Reiter,* 95 Wis. 2d at 473. This court's inherent common law authority to reconsider matters that stem from judicial creation has not been eroded by the passage of the comparative negligence act. *Lupie v. Hartzheim,* 54 Wis. 2d at 418.

We underscored our *Reiter* holding in *Wis. Natural Gas v. Ford, Bacon & Davis Construction Corp.,* 96 Wis. 2d 314, 291 N.W.2d 825 (1980). We reiterated that sec. 895.045, Stats., requires that in cases involving multiple tortfeasors the plaintiff's negligence is compared with the negligence of each individual defendant rather than with the combined negligence of all defendants. *Id.* at 326–27. This court concluded that, because the legislature had not amended or repealed the statute in light of this court's prior statutory construction and determination of legislative intent, the *Walker and Schwenn* construction of sec. 895.045 was correct and that the legislature was satisfied with the status of the comparative negligence law. Id. at 328.

We perceive the question of whether sec. 895.045, Stats., should be given the reading promoted by the plaintiffs to be similar to the question faced by this court in *Reiter* and *Ford, Bacon & Davis.* That is, we have a situation where a law passed by the legislature has been construed by this court. The legislature is presumed to know that in the absence of legislative change in the law, the construction given it will remain unchanged. Through its nonaction on the relevant provision of sec. 895.045 (plaintiff shall recover "if such neg-

ligence was not greater than the negligence of the *person* against whom recovery is sought") (emphasis added), the legislature in effect has acknowledged that the interpretation given sec. 895.045 is correct. Because we do not give equivocal meaning to the legislature's nonaction following this court's construction of a statute, and because there is no evidence that we have interpreted the "individual comparison" provision of sec. 895.045 incorrectly or have failed to correctly discern the legislative intent, we are restricted by our earlier holdings and the *Zimmerman* rule. Without eroding our common law authority, we reaffirm our holding that sec. 895.045 requires that a plaintiff's contributory negligence be compared with the negligence of each individual defendant.

Plaintiffs urge this court to apply the statutory rule of construction that "[t]he singular includes the plural, and the plural includes the singular." Section 990.001(1), Stats. Although the plaintiffs are correct that sec. 990.001(1) represents a general rule of statutory construction, we have already addressed the *Zimmerman* rule and its upshot in this case, namely, that our interpretation of the word "person" in the phrase "negligence of the person against whom recovery is sought" in sec. 895.045 effectively includes only the singular and that our holding has the acknowledgement and presumably the approval of the legislature.

## II.

Plaintiffs next urge this court to permit a jury to be informed of the effect of its verdict under the existing comparative negligence law. The plaintiffs argue that failing to inform the jury of the ultimate legal ef-

fect of its verdict "blindfolds" the jury. A jury's deliberations should not be attended by surmising about the effect of its verdict, plaintiffs assert.

Plaintiffs argue that it is basically unfair to litigants to have some juries which, by virtue of a knowledgeable juror or jurors, are appraised of the legal effect of the verdict, while other juries, without the benefit of a legally knowledgeable juror, are left to reach a verdict without the knowledge of its ultimate legal effect.

Plaintiffs' arguments overlook the function given to juries in this jurisdiction and ignore case precedent. The members of the jury are not to concern themselves about whether the verdict answers will be favorable to one party or to the other party, nor should a jury be concerned "with what the final result of [the] law suit may be." Wis. J I—Civil No. 100. *Olson v. Williams,* 270 Wis. 57, 71, 70 N.W.2d 10 (1955). The jury is a finder of fact; its charge does not include its applying the relevant law to the facts of the case, which is the function of the court. Indeed, the law applicable to a given set of facts is irrelevant to the function of finding those facts; to instruct the jury on matters irrelevant to its charge would disserve the jury's proper task and enlarge the scope of the jury's function beyond that of fact finder.

If it is true, as plaintiffs assert, that some juries will be knowledgeable about the ultimate effect of their verdicts while other juries will not be—thereby arguably subjecting a litigant's success or demise to the happenstance constituency of a particular jury—then the solution is to more emphatically instruct the members of a jury that its sole function is strictly that of fact finder. *See, McGowan v. Story,* 70 Wis. 2d 189, 198–99,

234 N.W.2d 325 (1975). To inform all juries of the effect of a special verdict in comparative negligence cases solely in the interest of uniformity of knowledge merely substitutes one problem for another. Informing a jury of the verdict's legal effect enlarges the function of the jury well beyond that of fact finder and into the domain of the court. It is the duty of the jury to find the facts and the duty and domain of the court to determine the legal rights of the parties after the return of the verdict. *Vanderbloemen v. Suchosky,* 7 Wis. 2d 367, 374, 97 N.W.2d 183 (1959); *see also, McGowan,* 70 Wis. 2d at 199.

Our determination that a jury should not be instructed on the ultimate effect of its verdict follows our case precedent. In *McGowan,* 70 Wis. 2d 189, this court fully considered the proposition to change the rule of no jury instruction on the ultimate effect of a special verdict. After stating that it is reversible error for either the court or counsel to inform the jury of the effect of its verdict, *id.* at 196, we reiterated that,

> " '[t]he sole purpose of a special verdict is to get the jury to answer each question according to the evidence, regardless of the effect or supposed effect of the answer upon the rights of the parties as to recovery. To inform them of the effect of their answer in this respect is to frustrate this purpose.' " *Id.* at 198 (quoting *Anderson v. Seelow,* 224 Wis. 230, 234, 271 N.W. 844 (1937)).

Although we recognized that multiple-party negligence cases may involve complex matters of negligence apportionment by the jury, we determined that advising of the ultimate effect of the verdict would not mitigate any confusion and would only compound the problem. Ultimately, it is the role of the court acting under

the law to implement and give meaning to the policies and ramifications of the comparative negligence statute. *Id.* at 199.

■ The trial court generally has broad discretion regarding jury instructions. *State v. Higginbotham,* 110 Wis. 2d 393, 403–04, 329 N.W.2d 250 (1982). However, it is reversible error for either the court or counsel to inform a jury of the legal effect of its verdict. *McGowan,* 70 Wis. 2d at 196. Given the law of this jurisdiction regarding instructing the jury on the legal effect of its special verdict and given the sound rationale supporting it, we find that the trial court did not err in refusing to so instruct the jury. We therefore affirm the decision of the court of appeals in this regard.

III.

The plaintiffs also ask this court to enunciate, and in fact extend, the duty of a tavern owner with respect to the safety of his patrons on his place of business. The plaintiffs assert that the court of appeals erroneously affirmed the judgment in favor of Vanden Langenberg by incorrectly interpreting that the owner's duty to act on behalf of his patrons' safety ends at the threshold of the owner's premises. In the event an owner by exercise of ordinary care becomes aware of the potential of harm to a patron and is in a position to avoid such harm, "the tavern owner's duty transcends the walls of the tavern," plaintiffs argue.

The rule regarding a tavern owner's duty to protect a patron from acts of third persons is properly set forth in Wis. J I—Civil 8045, which reads in relevant part:

"8045 DUTY OF A PROPRIETOR OF A PLACE OF BUSINESS TO PROTECT A PATRON FROM INJURY CAUSED BY ACT OF THIRD PERSON

"The proprietor of a place of business (tavern, etc.) who holds it out to the public for his business purposes is not an insurer of the safety of the patrons against personal injuries inflicted by third persons, that is, other patrons on the premises. Nevertheless, he has a duty to exercise ordinary care to protect members of the public *while on the premises* from bodily harm caused to them by the accidental, negligent, or intentionally harmful acts of third persons if he by the exercise of ordinary care could have discovered that such acts were being done or were about to be done, and he could have protected the members of the public *(injured patron)* by controlling the conduct of the third person or by giving a warning adequate to enable them *(injured patron)* to avoid harm." (Nonparenthetical emphasis added.)

*See also, Weihert v. Piccione,* 273 Wis. 448, 455–56, 78 N.W.2d 757 (1956). This instruction, originally numbered Wis. J I—Civil 1027.5, was read to the jury by Judge Grant.

The plaintiffs rely on *Kowalczuk v. Rotter,* 63 Wis. 2d 511, 217 N.W.2d 332 (1974), and *Alonge v. Rodriquez,* 89 Wis. 2d 544, 279 N.W.2d 207 (1979), for their proposition that an owner's duty to his patrons extends beyond the owner's premises. In *Kowalczuk,* the plaintiff ordered a beer in defendant's tavern. As the bartender was returning change to Kowalczuk from his purchase, Kowalczuk was initially attacked by two men. A police officer independently testified that, as he was cruising by the area, he saw three people attack-

ing the plaintiff about eighty feet south of the tavern. *Id.* at 512–13.

The sole issue in *Kowalczuk* was whether there was sufficient evidence to make out a *prima facie* case against the defendant tavern owner for the negligent failure of his employees to protect the plaintiff. *Id.* at 513. We stated that,

> ". . . the proprietor of a place of business who holds it out to the public for entry for his business purposes is liable to members of the public *while on the premises* for such purpose for harm caused by the accidental negligence or intentional acts of third persons, if the proprietor by the exercise of reasonable care could have discovered that such acts were being done or were about to be done and could have protected the members of the public by controlling the conduct of the third persons, or by giving a warning adequate to enable them to avoid harm."
> *Id.* at 513–14. (Emphasis added.)

We determined that the trial court's judgment of nonsuit could not be affirmed based on the facts of that case. *Id.* at 514.

In *Alonge,* the minor plaintiff was injured when a minor co-patron at a Red Carpet Inn allegedly struck the plaintiff in the face with a drinking glass. The complaint alleged that the bartender breached the duty of care to be exercised on behalf of the patron's safety by selling an alcoholic beverage to a minor under circumstances which the bartender " 'knew or should have known presented an unreasonable risk of harm to others.' " 89 Wis. 2d at 549–50. We repeated the rule from *Kowalczuk* concerning a tavern owner's duty of ordinary care for the owner's patrons and concluded that the third-party complaint was sufficient to state a

cause of action against the defendant Red Carpet Inns, Inc. "Red Carpet had the responsibility of using ordinary care to protect [the plaintiff] from injury from causes reasonably to be anticipated." *Id.* at 552.

Plaintiffs here argue that *Kowalczuk* and *Alonge* stand for the proposition that a tavern owner's duty of ordinary care with respect to his patrons' safety extends beyond the strict confines of the tavern premises. The argument follows that Vanden Langenberg should not be dismissed from the retrial on the issue of liability merely because the attack of Delvaux occurred several blocks from Vanden Langenberg's property. We disagree with the plaintiffs' argument and conclusion.

*Alonge* does not even remotely intimate that a tavern owner's duty of ordinary care extends beyond the owner's premises. Likewise, *Kowalczuk* does not extend a tavern owner's duty beyond the owner's premises. Although we stated that once an attack on a patron is made it becomes the owner's obligation to use reasonable means to protect the patron from further injury, *Kowalczuk,* 63 Wis. 2d at 514, we do not think *Kowalczuk* stands for the proposition asserted by plaintiffs.

Here, the court of appeals correctly observed, as a matter of law, that the initial incident on Vanden Langenberg's premises was completed by the time the fatal fight occurred outside the Dew Drop Inn. Vanden Langenberg interceded in the argument between the Delvauxs and Collins and separated the parties by having them sit at opposite ends of the bar. When the Delvauxs left Van's Bar, Vanden Langenberg insisted that Collins not immediately leave as well, lest a fight develop just outside Van's Bar.

In sum, the *Kowalczuk* and *Alonge* decisions do not extend a tavern owner's duty for the safety of his patrons beyond the owner's premises, contrary to plaintiffs' assertions; Wis. J I—Civil 8045 properly apprised the jury of a tavern owner's duty. Nor do we now choose to extend a tavern owner's duty beyond his business premises. Because the fatal fight did not occur on Vanden Langenberg's premises, there is no opportunity to invoke the rule set forth in *Kowalczuk, Alonge,* and Wis. J I—Civil 8045 and thereby subject Vanden Langenberg to the retrial on the issue of liability. The court of appeals properly excluded Vanden Langenberg from the retrial on the issue of liability.

Finally, plaintiffs assert that our holding in *Sorensen v. Jarvis,* 119 Wis. 2d 627, dictates that Vanden Langenberg be subject to liability for the fight occurring outside the Dew Drop Inn.

*Sorensen* is inapposite to the issue discussed here. The *Kowalczuk* and *Alonge* decisions are concerned with the duty of a proprietor of a place of business to protect a patron on the premises from injury caused by the act of a third person. *Sorensen,* by contrast, fashioned a rule whereby a vendor of intoxicating liquor has, in effect, a duty to refrain from selling intoxicating beverages to a minor or otherwise face liability to injured third parties, no matter whether the injury occurred on or off the vendor's premises, whenever such negligent act of selling liquor was a substantial factor in causing the harm to the third person. *Sorensen,* 119 Wis. 2d at 645, 646. Although we acknowledge that these two rules may overlap in some situations—a tavern owner may theoretically face liability on both *Kowalczuk* and *Sorensen* theories if the owner sells intoxi-

cating beverages to the minor who thereafter causes injury to an on-premises patron, for example—we do not find that *Sorensen* in any way extends the general duty of a tavern owner to exercise ordinary care for the protection of his patrons beyond the boundaries of his business premises.

## IV.

■
The *Sorensen* rule of liability was given prospective effect only. That is, we stated that a vendor will be subject to liability for those acts of negligently supplying intoxicating beverages to a minor on or after September 1, 1984. *Sorensen,* 119 Wis. 2d at 648.[6] In

---

[6] The *Sorensen* rule partially abrogated the common law rule of nonliability for commercial vendors of alcohol. At common law a cause of action was not recognized against a commercial vendor who supplied intoxicating beverages to a patron whom the vendor knew or should have known was intoxicated, where the patron's consumption of the alcohol was a cause of the accident. *See, e.g., Olsen v. Copeland,* 90 Wis. 2d 483, 280 N.W.2d 178 (1979). The basis of the common law rule was the theory that the third party's injury was proximately caused by the act of the purchaser in drinking the liquor, not by the vendor in selling it. *Olsen,* 90 Wis. 2d at 486. Public policy considerations also initially dictated that the common law rule not be abolished. *See, e.g., Garcia v. Hargrove,* 46 Wis. 2d 724, 732–33, 176 N.W.2d 566 (1970).

In 1985 Wis. Laws 47, the legislature established and codified a civil liability exemption for a person who procures, sells, dispenses, or gives away alcoholic beverages to another person. The exemption does not apply when the provider knew or should have known that the providee was under the legal drinking age and when the alcoholic beverages provided to the underage person were

this case, Vandenberg allegedly served alcoholic beverages to the minor Collins during the evening of March 26, 1978, prior to the effective date of application of the *Sorensen* rule. The plaintiffs nevertheless invite this court to retroactively apply the *Sorensen* holding to the facts of this case. We decline the invitation.

The plaintiffs essentially argue that it would be manifestly unjust, given the procedural background of this case, to order a retrial on the issue of liability yet deny the plaintiffs the benefit of the *Sorensen* rule that a vendor has committed a negligent act if he sold intoxicating beverages to a person whom he knew or should have known was a minor. On February 24, 1981, the plaintiffs filed their complaint which included an allegation that Vanden Langenberg knowingly sold intoxicating beverages to a minor and that such act was negligent and causal of plaintiffs' damages. The plaintiffs were successful in defending against a motion for summary judgment brought by Vanden Langenberg; Judge Parins' decision on the motion was dated September 18, 1981. The trial on the action commenced on January 3, 1984, and the jury returned its verdict on January 11, 1984. Plaintiffs note that Judge Grant, who presided over the jury trial, failed to hold the tavern owner negligent *per se* for serving a minor intoxicating beverages.

The plaintiffs see inequity in that the complaint in *Sorensen* was dismissed on August 8, 1983, for failing to state a claim—thereby allowing the dismissal to be appealed—while the instant complaint survived beyond the pleading stage but in effect "lost" at the trial

---

a substantial factor in causing injury to a third party. Section 125.035, Stats. (created by 1985 Wis. Laws 47, sec. 4).

stage because the trial court refused to hold Vanden Langenberg negligent *per se* and refused to instruct the jury on a tavern owner's duty not to sell intoxicating beverages to a minor. Conversely, plaintiffs argue, the *Sorensen* plaintiffs, who were unsuccessful in proceeding beyond the pleading stage, will have had the benefit of the rule at their trial.

We recently considered the equities attendant with the procedural history of a case in relation to a new rule of law given prospective effect by this court. In *Harmann v. Hadley,* 128 Wis. 2d 371, 382 N.W.2d 673 (1986), we determined that the equities attending the procedural background of that case required that the holding set forth in *Koback v. Crook,* 123 Wis. 2d 259, 276, 366 N.W.2d 857 (1985), be applied to the *Harmann* case, 128 Wis. 2d at 386, despite our holding in *Koback* that the *Koback* rule be given prospective effect only.

In *Koback* this court determined that social hosts may be held liable for a third person's personal injury caused by the conduct of a minor driver to whom the hosts negligently furnished intoxicating beverages. *Koback,* 123 Wis. 2d at 276. The *Koback* decision was announced by this court on April 30, 1985. The *Harmann* case likewise factually dealt with social host liability. *Harmann,* 128 Wis. 2d at 373, 374.

The *Koback* complaint and the *Harmann* complaint were both dismissed by the respective trial courts at the pleading stage for failure to state a claim; the *Harmann* complaint was dismissed four months prior to the *Koback* dismissal. The respective plaintiffs filed petitions to bypass the court of appeals; the *Harmann* plaintiffs filed their petition five months before the *Koback* plaintiffs filed. Although each case pre-

sented similar opportunities for this court to enunciate the law with respect to the liability of a social host who furnishes intoxicating beverages to a minor, this court denied the *Harmann* petition but granted the *Koback* petition five months later. *See, Harmann,* 128 Wis. 2d at 382–83. One explanation for the denial of the *Harmann* petition was our contemporaneous granting of a petition in the *Sorensen* case, which at that time appeared to raise a similar issue raised in the *Harmann* petition. *Id.* at 383.

We viewed the procedural histories of the *Koback* and *Harmann* cases as providing little justification for the result that the *Koback* plaintiffs would receive the benefit of the new social host rule while the *Harmann* plaintiffs, who presented this court with the same issue only months before, would not. *Id.* at 384–85. "A basic tenet in our judicial system is that individuals similarly situated should be treated similarly." *Id.* at 384.

The *Harmann* decision creates a narrow exception to this court's pronouncements regarding the prospective effect of its decisions. The plaintiffs in this case and the plaintiffs in *Sorensen* are not individuals similarly situated; the jury returned its verdict in this case (January 11, 1984) well before we announced our decision in *Sorensen* (June 28, 1984). The plaintiffs before us did not offer this court the opportunity to abrogate the common law rule of vendor nonliability only months before the *Sorensen* plaintiffs offered us the opportunity, unlike the situation in *Harmann* and *Koback.* There is no fortuitous event in the present situation which prompted this court to consider the *Sorensen* issue when it could have considered instead the similar issue of vendor liability presented in this case. Indeed, we granted the *Sorensen* petition to by-

pass on March 5, 1984; we granted the *Delvaux* petition to review on September 10, 1985. There is no "chance, but determinative, circumstance," *id.* at 383, in the timing of this review which caused us to consider the *Sorensen* case instead of this case. The *Sorensen* and *Delvaux* cases simply are not sufficiently procedurally similar to warrant a *Harmann*-type result, which was based on considerations of equity when sufficiently similar procedural histories are shared by factually and legally similar cases.

This court considered whether to give retroactive effect to the new rule of law expressed in *Sorensen*. We determined that the rule of vendor liability should be prospectively applied, in addition to its application to the parties in the cases then before us. "[T]here shall be liability only for the acts of negligence of a vendor selling to a minor on or after September 1, 1984." *Sorensen,* 119 Wis. 2d at 648. The alleged act of negligence at issue here—the serving of alcoholic beverages by Vanden Langenberg to the minor Collins—occurred on March 26, 1978. The rule expressed in *Sorensen* has no application to the facts before us and must not be brought to bear on the retrial of the liability issue.

## V.

Finally, plaintiffs seek to alter the well-settled rules of attributability of a deceased's contributory negligence in wrongful death actions. They first argue that sec. 895.04(4), Stats., creates separate and distinct causes of action in the spouse, unemancipated or dependent children, and parents of the deceased so that each might recover for their respective losses. They assert that because sec. 895.04(4) states that any person

who is entitled to bring a wrongful death action may be awarded damages for pecuniary injury, and because the plaintiff spouse and plaintiff minor children are entitled to bring an action under sec. 895.04(1), they are therefore entitled to judgment in their own behalf for pecuniary injury and loss of society and companionship independent of any contributory negligence of their decedent.

Plaintiffs confuse the concepts of those entitled to bring a wrongful death action and those entitled to recover in such an action. "The right to sue must be distinguished from the ownership of the recovery" in a wrongful death action. *Nichols v. United States Fidelity & Guaranty Co.,* 13 Wis. 2d 491, 497, 109 N.W.2d 131 (1961). We begin by quoting the applicable statutes:

" **895.04 Plaintiff in wrongful death action.** (1) An action for wrongful death may be brought by the personal representative of the deceased person or by the person to whom the amount recovered belongs.
". . .
" (4) Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action. Additional damages not to exceed $50,000 for loss of society and companionship may be awarded to the spouse or unemancipated or dependent children, or parents of the deceased."

An action for wrongful death is purely statutory; no right for such recovery existed at common law. *Krantz v. Harris,* 40 Wis. 2d 709, 714, 162 N.W.2d 628 (1968). The extent of the right to recover for wrongful death, therefore, must be determined solely from the

relevant statutes and case law interpreting those statutes.

■The plaintiffs are correct if they mean that the wrongful death statutes create a cause of action separate from "any cause of action which the deceased might have had if he had survived." *Wurtzinger v. Jacobs,* 33 Wis. 2d 703, 710, 148 N.W.2d 86 (1967). However, the statutes do not provide for separate wrongful death actions concerning the same wrongful death, the actions are to be consolidated so that a single judgment may be entered protecting all of the defendants. Section 895.04(3), Stats.[7] "[A] cause of action for wrongful death is a single cause of action with ownership thereof vested in 'the person to whom the amount recovered belongs' . . . ." *Truesdill v. Roach,* 11 Wis. 2d 492, 497, 105 N.W.2d 871 (1960). Section 895.04(2) designates to whom the amount recovered belongs.[8]

---

[7] That section provides:

"If separate actions are brought for the same wrongful death, they shall be consolidated on motion of any party. Unless such consolidation is so effected that a single judgment may be entered protecting all defendants and so that satisfaction of such judgment shall extinguish all liability for the wrongful death, no action shall be permitted to proceed except that of the personal representative."

[8] Section 895.04(2) states in relevant part:

"If the deceased leaves surviving a spouse, and minor children under 18 years of age with whose support the deceased was legally charged, the court before whom the action is pending . . . shall determine the amount, if any, to be set aside for the protection of such children after considering the age of such children, the amount involved, the capacity and integrity of the surviving spouse, and any other facts or information it may have or receive . . . . If there are no such surviving minor children, the amount recovered shall belong and be paid to the spouse of the deceased; if no spouse survives, to the deceased's lineal heirs as determined by s. 852.01; if no lineal

We fail to see the plaintiffs' argument that section 895.04(4) allows for a distinct cause of action independent of any of the negligence of the decedent. In *Haase v. Employers Mut. Liability Ins. Co.,* 250 Wis. 422, 433, 27 N.W.2d 468 (1947), we made clear that the right to recover in a wrongful death action is limited to cases in which the decedent could have recovered if he or she had lived. In *Haase,* we construed sec. 331.03, Stats. 1945, which was the identically worded predecessor to sec. 895.03. That section provides:

> **" 895.03 Recovery for death by wrongful act.** Whenever the death of a person shall be caused by a wrongful act, neglect or default and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured; provided, that such action shall be brought for a death caused in this state."

Although this section does not state who is entitled to bring a wrongful death action—sec. 895.04 addresses that issue—this section authorizes recovery by setting forth the responsible party's liability for a decedent's wrongful death when the decedent would have been entitled to maintain an action and recover damages. *Harris v. Kelley,* 70 Wis. 2d 242, 248, 234 N.W.2d 628 (1975). Section 895.04(4) sets forth that pecuniary and loss of society and companionship damages may be awarded

heirs survive, to the deceased's brothers and sisters. If any such relative dies before judgment in the action, the relative next in order shall be entitled to recover for the wrongful death. . . ."

in a wrongful death action, but does not address whether damages are awardable in a particular fact situation.

Even though a wrongful death action is separate and distinct from any actions of the decedent's estate, *Nichols*, 13 Wis. 2d at 496, the threshold determination for the awarding of damages in a wrongful death action is the existence of liability for the wrongful death. This threshold determination is made by examining whether the decedent would have been entitled to maintain an action and recover damages had he lived. Section 895.03, Stats. Because Delvaux was more negligent than any of the defendants individually, he could not have recovered damages for his injury. Notwithstanding the separate and distinct nature of the wrongful death action, the plaintiffs may not recover any damages sustained as a result of Delvaux's death because Delvaux himself could not have recovered for his injuries. We agree with the trial court and court of appeals that sec. 895.03 must not be read in isolation from sec. 895.04. In addition, sec. 895.04(7) requires that the contributory negligence of the deceased be considered in determining whether the beneficiaries are entitled to recovery.

The result proposed by the plaintiffs would have untenable consequences. If the negligence of the decedent is not attributed to those entitled to bring a wrongful death action, then the decedent's beneficiaries conceivably could recover for decedent's death whether or not it was wrongful. A decedent might be one hundred percent contributorily negligent and yet, under the plaintiffs' theory, the beneficiaries would nevertheless recover damages against the defendant for decedent's "wrongful" death. However, the wrongful

death statutes do not even remotely suggest a result embraced by the plaintiffs. The negligence of the decedent is properly attributable to those bringing the wrongful death action.

As an alternative theory of recovery under the wrongful death statutes, plaintiffs submit that sec. 895.04(7), Stats., provides merely for the diminishment of damages and does not act as a bar to the beneficiaries' right of recovery. Section 895.04(7) provides:

> "Damages found by a jury in excess of the maximum amount specified in sub. (4) shall be reduced by the court to such maximum. The aggregate of the damages covered by subs. (4) and (5) shall be *diminished* under s. 895.045 if the deceased or person entitled to recover is found negligent." (Emphasis added.)

Plaintiffs are correct that their suggested interpretation of this subsection would give eminent meaning to the purpose of the wrongful death statute, which is to compensate the survivors for the pecuniary benefits which they would have derived from the earning power of the decedent had he or she lived. *Weiss v. Regent Properties, Ltd.*, 118 Wis. 2d 225, 230, 346 N.W.2d 766 (1984). But we cannot ignore the plain meaning of the statute, which does not give preeminent consideration to the purpose of compensation of the wrongful death statute without first considering the decedent's contributory negligence. Section 895.04(7), Stats., plainly states that awardable damages under secs. 895.04(4) and (5) "shall be diminished under s. 895.045 if the deceased . . . is found negligent." *Id.* Delvaux was found by a jury to be forty-five percent contributorily negligent. The comparative negligence statute effectively instructs that in this instance the diminishment

of damages must amount to a bar to recovery because decedent's negligence was "greater than the negligence of the person against whom recovery is sought." Section 895.045. Section 895.04(7) instructs that damages must be diminished in accordance with sec. 895.045, which means that in some instances "diminishment" of damages means a complete bar to recovery. As we discussed above, sec. 895.045 represents a modified form of comparative negligence, not a pure form. With the breakdown of the causal negligence before us, plaintiffs would not be entitled to fifty-five percent of their damages because recovery must be barred under sec. 895.045, per the instruction of sec. 895.04(7). This same principle will apply when the issue of liability is retried.

*By the Court.*—The decision of the court of appeals is affirmed.