STATE of Wisconsin, Plaintiff-Respondent,

v.

Scott L. STEVENSON, Defendant-Appellant.

Supreme Court

*No. 98–2110–CR. Oral argument February 10, 2000.—Decided June 28, 2000.*

(On certification from the court of appeals.)

## 2000 WI 71

(Also reported in 613 N.W.2d 90.)

For the defendant-appellant there were briefs by *Elizabeth Cavendish-Sosinski, Daniel P. Fay* and *Oakton Avenue Law Offices, S.C.*, Pewaukee, and oral argument by *Daniel P. Fay*.

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1.  ANN WALSH BRADLEY, J.  This case is before the court on certification pursuant to Wis. Stat. (Rule) § 809.61 (1997–98).[1] The defendant, Scott L. Stevenson, appeals the circuit court's judgment of conviction on two counts of making a videotape depicting a person in a state of nudity without the person's consent in violation of Wis. Stat. § 944.205(2)(a).[2] Stevenson contends that the statute is facially overbroad under the First Amendment. Because we conclude that Wis. Stat. § 944.205(2)(a) suffers from unconstitutional overbreadth, and is not amenable to judicial limitation, we reverse the judgment of conviction and remand to

---

[1] All future references to the Wisconsin Statutes are to the 1997–98 volumes unless otherwise indicated.

[2] The defendant appeals a judgment of the Circuit Court for Waukesha County, Donald J. Hassin, Judge, convicting him of two counts of making a videotape depicting a person in a state of nudity without the person's consent under Wis. Stat. § 944.205(2)(a) and one count of obstructing a police officer under Wis. Stat. § 946.41(1).

the circuit court for re-sentencing on the charge of obstructing a police officer.

¶ 2. The relevant facts to this appeal are not disputed by the parties. Scott Stevenson and his former girlfriend, R.L.H., were involved in a long-term relationship that R.L.H. ended in mid–1997. Subsequent to the end of the relationship, Stevenson went to the house where R.L.H. resided with her parents and climbed onto the roof outside her bedroom window. Perched upon the roof, he proceeded to videotape R.L.H. in various stages of undress as she moved about her bathroom. Stevenson made this videotape without R.L.H.'s knowledge or consent.

¶ 3. Stevenson returned to the house the next evening, this time videotaping R.L.H. from a tree outside her bedroom window. Stevenson videotaped his former girlfriend partially nude while she stood in front of her mirror changing outfits. Again, R.L.H. neither knew of nor consented to the making of the videotape.

¶ 4. Shortly thereafter, the Waukesha Police Department received a report of a "peeping Tom" on the roof of R.L.H.'s house. Upon arrival at the scene, police officers chased Stevenson from the roof and apprehended him in an alley. The officers then arrested Stevenson for disorderly conduct and resisting an officer. The next day, one of R.L.H.'s brothers recovered a video camera in the alley behind his parents' house and contacted the authorities. This video camera contained the tape made by Stevenson depicting his former girlfriend in the nude.

¶ 5. The criminal information filed against Stevenson originally charged him with 31 counts, including numerous counts of making a videotape depicting R.L.H. nude without her consent contrary to

Wis. Stat. § 944.205(2)(a).[3] In response to Stevenson's motion, the circuit court dismissed as multiplicitous 21 of the 31 counts charged in the information.

¶ 6. Stevenson also challenged the constitutionality of Wis. Stat. § 944.205(2)(a), asserting that the statute was both vague for failing to clearly define the unit of prosecution under the statute and overbroad for infringing on protected expression under the First Amendment. The circuit court rejected the constitutional challenge, finding that Wis. Stat. § 944.205(2)(a) did not implicate First Amendment rights and that Stevenson had failed to satisfy his burden of proving that the statute was unconstitutional.

¶ 7. Upon the reconsideration of the constitutional challenge and the circuit court's reiteration of its reason for rejecting that challenge, Stevenson entered no contest pleas to two counts of violating Wis. Stat. § 944.205(2)(a) and one count of obstructing a police officer in violation of Wis. Stat. § 946.41(1). The circuit court then sentenced Stevenson to the maximum of two years in prison on each violation of Wis. Stat. § 944.205(2)(a), to run consecutively, and nine months in county jail on the obstruction count. The sentences were stayed in favor of four years probation with specific conditions, including one-year jail time in the Waukesha County Jail.

---

[3] This statute provides:

(2) Whoever does any of the following is guilty of a Class E felony:

(a) Takes a photograph or makes a motion picture, videotape or other visual representation or reproduction that depicts nudity without the knowledge or consent of the person who is depicted nude, if the person knows or has reason to know that the person who is depicted nude does not know of and consent to the taking or making of the photograph, motion picture, videotape or other visual representation or reproduction.

¶ 8.   Stevenson appealed, asserting the same constitutional arguments of vagueness and overbreadth raised before the circuit court. Subsequently, the court of appeals certified to this court the following question: Is Wis. Stat. § 944.205(2)(a), subjecting a person who "[t]akes a photograph or makes a motion picture, videotape or *other visual representation or reproduction* that depicts nudity without the knowledge and consent of the person who is depicted nude" unconstitutionally overbroad?[4]

¶ 9.   The certified question before this court requires us to examine whether Wis. Stat. § 944.205(2)(a) survives constitutional scrutiny. The constitutionality of a statute presents a question of law that we review independently of the determinations rendered by the circuit court or the court of appeals. *State v. Janssen*, 219 Wis. 2d 362, 370, 580 N.W.2d 260 (1998).

¶ 10.   Statutes generally benefit from a presumption of constitutionality that the challenger must refute. *County of Kenosha v. C&S Management, Inc.*, 223 Wis. 2d 373, 383, 588 N.W.2d 236 (1999). When the statute implicates the exercise of First Amendment rights, however, the burden shifts to the government to prove beyond a reasonable doubt that the statute passes constitutional muster. *Lounge Management v. Town of Trenton*, 219 Wis. 2d 13, 20, 580 N.W.2d 156

---

[4] Because we decide this case on overbreadth grounds, we do not reach the claim of unconstitutional vagueness under Wis. Stat. § 944.205(2)(a). Additionally, we note that although Stevenson raised a vagueness claim before the court of appeals, he has not argued or briefed the vagueness challenge before this court.

(1998); *City of Madison v. Baumann*, 162 Wis. 2d 660, 668, 470 N.W.2d 296 (1991). Because Wis. Stat. § 944.205(2)(a) implicates First Amendment rights, the State assumes the burden of proving that the statute is constitutional beyond a reasonable doubt.

¶ 11.   We begin our discussion by setting forth the general principles underpinning the First Amendment overbreadth framework to illuminate our subsequent examination of Wis. Stat. § 944.205(2)(a). The genesis of the overbreadth doctrine has been attributed to the United States Supreme Court in *Thornhill v. Alabama*, 310 U.S. 88, 97–98 (1940), which recognized that broadly written statutes substantially inhibiting free expression should be open to attack even by a party whose own conduct remains unprotected under the First Amendment. *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984); Henry P. Monaghan, *Overbreadth*, 1981 Sup. Ct. Rev. 1, 11–12 (1982).

¶ 12.   Litigants claiming that a statute suffers from a constitutional infirmity generally must have a personal and vested interest in the outcome of the litigation, demonstrating the statute's unconstitutional application to their individual conduct. *Broadrick v. Oklahoma*, 413 U.S. 601, 610–11 (1973). Yet, in the First Amendment context the traditional rules of standing have been modified due to the gravity of a "chilling effect" that may cause others not before the court to refrain from constitutionally protected speech or expression. *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93 (1988); *State v. Tronca*, 84 Wis. 2d 68, 88–89, 267 N.W.2d 216 (1978). In light of the critical significance of First Amendment rights, challengers may champion the free expression rights of

others when their own conduct garners no protection. *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965); *Janssen*, 219 Wis. 2d at 372.

¶ 13. The prophylactic overbreadth doctrine further serves to prevent the selective enforcement of a statute that would target and discriminate against certain classes of persons. *State v. Thiel*, 183 Wis. 2d 505, 522, 515 N.W.2d 847 (1994). The danger inherent in overbroad statutes is that such statutes provide practically unbridled administrative and prosecutorial discretion that may result in selected prosecution based on certain views deemed objectionable by law enforcement. *Little v. City of Greenfield*, 575 F. Supp. 656, 662 (E.D. Wis. 1983). *See also* Richard H. Fallon Jr., *Making Sense of Overbreadth*, 100 Yale L.J. 853, 884 (1991). The overbreadth doctrine aims to alleviate that danger.

¶ 14. Nevertheless, courts should only sparingly utilize the overbreadth doctrine as a tool for statutory invalidation, proceeding with caution and restraint. *Lounge Management*, 219 Wis. 2d at 22–23. Although a party may hypothesize situations in which the challenged statute reaches too sweepingly, when the statute's reach encompasses expressive conduct in addition to speech, the overbreadth must be both real and substantial before the statute may be invalidated. *Id.*; *City of Milwaukee v. Wroten*, 160 Wis. 2d 207, 226, 466 N.W.2d 861 (1991). Marginal infringement or fanciful hypotheticals of inhibition that are unlikely to occur will not render a statute constitutionally invalid on overbreadth grounds.

¶ 15. Having determined that a particular statute is overbroad, courts may pursue one of several options. First, courts may apply a limiting construction to rehabilitate the statute when such a narrowing and

validating construction is readily available. *Janssen*, 219 Wis. 2d at 378. Second, courts may cure the constitutional defect by severing the unconstitutional provisions of a statute and leaving the remainder of the legislation intact. *Thiel*, 183 Wis. 2d at 522. Finally, courts may determine that the statute is not amenable to judicial limitation or severance and invalidate the entire statute upon a determination that it is unconstitutional on its face. *Id.*

¶ 16.   With these general overbreadth principles providing contextual guidance, we proceed next to examine the constitutionality of Wis. Stat. § 944.205(2)(a), the statute at issue in this case. The statute provides:

> (2)   Whoever does any of the following is guilty of a Class E felony:
>
> (a)   Takes a photograph or makes a motion picture, videotape or other visual representation or reproduction that depicts nudity without the knowledge or consent of the person who is depicted nude, if the person knows or has reason to know that the person who is depicted nude does not know of and consent to the taking or making of the photograph, motion picture, videotape or other visual representation or reproduction.

Wis. Stat. § 944.205(2)(a). At the outset, we note that Stevenson's conduct of surreptitiously videotaping his former girlfriend in the nude is abhorrent and that such conduct is given no protection under the First Amendment. Stevenson concedes as much, yet contends that on its face Wis. Stat. § 944.205(2)(a) overreaches in prohibiting other expression that should be sheltered under the First Amendment.

¶ 17.   Stevenson claims that the State may legitimately proscribe his conduct only under a properly

drawn statute that is narrowly tailored so as to avoid any chilling effect on free expression. Although Stevenson's actions do not fall under the protective mantle of the First Amendment, we must be mindful that our overbreadth analysis centers on the statute, Wis. Stat. § 944.205(2)(a), and its potential deterrent effect on others not before this court.

¶ 18. To illustrate the overbreadth of Wis. Stat. § 944.205(2)(a), Stevenson sets forth in his brief a myriad of protected artistic images and contends that the statute criminalizes these images as "visual representations" or "reproductions." Included among these images are: (1) Titian's "Venus of Urbino," a 1528 painting of a female nude reproduced by the Yale University Press; (2) a 1927 Imogen Cunningham photograph of a nude female torso featured in Forbes magazine; (3) the New York Times publication of a Pulitzer Prize winning photograph that depicts a Vietnamese girl running nude following a napalm attack; and (4) a political cartoon appearing in Penthouse magazine portraying Kenneth Starr along with partially clad Monica Lewinsky and Linda Tripp.

¶ 19. Stevenson maintains that on its face Wis. Stat. § 944.205(2)(a) prohibits artistic expressions from being reproduced in books and magazines because the original nude subjects did not consent to those specific reproductions. As to the Pulitzer Prize winning photograph and the political cartoon, he argues that the statute prohibits these original representations as well, since the depicted persons did not consent to the original representations.

¶ 20. Furthermore, Stevenson contends that his attorney's decision to include these images in the appellate brief to this court subjects his attorney to criminal prosecution under Wis. Stat. § 944.205(2)(a)

for reproducing the images without the consent of the persons depicted nude. According to Stevenson, the State's decision not to prosecute his attorney underscores the danger of selective enforcement that the overbreadth doctrine seeks to prevent.

¶ 21.   At oral argument, the State conceded that Wis. Stat. § 944.205(2)(a) is overbroad on its face. We agree. The statute not only properly prohibits Stevenson's surreptitious videotaping of his former girlfriend in the nude, but also improperly prohibits all visual expression of nudity without explicit consent, including political satire and newsworthy images.

██

¶ 22.   Wisconsin Stat. § 944.205(2)(a) does not limit its reach to original depictions of nudity but rather overreaches to all reproductions. It chills the ability to include copies of masterpieces like Michaelangelo's "David" in a book devoted to famous sculptures and also prevents the dissemination of materials that may portray nudity for health or educational purposes. Accordingly, Wis. Stat. § 944.205(2)(a) indiscriminately casts a wide net over expressive conduct protected by the First Amendment and is unconstitutionally overbroad.

¶ 23.   Having determined that the statute is overbroad, the question that remains is whether the taint of unconstitutional overbreadth may be dissipated by this court applying a limiting construction to Wis. Stat. § 944.205(2)(a). In attempting to sustain its burden of proving that the statute is constitutional, the State proffers language as a cure for the statute's overbreadth.

¶ 24.   Adding its suggested language to Wis. Stat. § 944.205(2)(a), the State maintains that the statute should apply when a person:

Takes a photograph or makes a motion picture, videotape or other visual representation or reproduction that depicts nudity without the knowledge and consent of the person who is depicted nude *while that person is nude in circumstances where they have a reasonable expectation of privacy*, if the person knows or has reason to know that the person who is depicted nude does not know of and consent to the taking or making of the photograph, motion picture, videotape or other visual representation or reproduction (emphasis denotes additional language advanced by the State).

¶ 25. The State argues that Wis. Stat. § 944.205(2)(a) is an invasion of privacy statute aimed at prohibiting the surreptitious videotaping or visual representation of a person without consent while the person has a reasonable expectation of privacy.[5] According to the State, the addition of the proffered language will rid the statute of its sweeping reach and rein in its application to conduct like that in which Stevenson has engaged.

[5] The State refers to a letter in the legislative drafting file for the statute and notes that the legislation was precipitated by an incident in the city of River Falls, in which an adult male secretly videotaped female foreign exchange students visiting or residing in his home while the students appeared undressed in the bathroom. *See* Letter of Chief of Police of River Falls to State Representative Sheila Harsdorf, October 11, 1993, Legislative Reference Bureau Drafting File for 1995 Wis. Act 249. The State notes that although the comments of those who propose legislation are not binding as legislative intent, the comments nevertheless represent persuasive authority as to the intent underlying the statute. *State Pub. Defender v. Circuit Court for Dane County*, 184 Wis. 2d 860, 868–69, 517 N.W.2d 144 (1994).

¶ 26.    Stevenson recognizes the tension between the right to privacy and the necessity of promoting the free expression of ideas. He acknowledges that the language advanced by the State is presently included in the privacy statutes of Missouri and Oregon.[6] Yet, Ste-

[6] Apparently, three states have enacted privacy statutes that contain similar language to Wis. Stat. § 944.205(2)(a).

The Missouri invasion of privacy statute, Mo. Ann. Stat. § 565.253 (West 1999), provides in relevant part:

> (1)  A person commits the crime of invasion of privacy if he knowingly views, photographs or films another person, without that person's knowledge and consent, while the person being viewed, photographed or filmed is in a state of full or partial nudity and is in a place where he would have a reasonable expectation of privacy.

Oregon's privacy statute, Or. Rev. Stat. § 163.700 (1997) reads in pertinent part:

> (1)  Except as provided in ORS 163.702 [enumerated exceptions], a person commits the crime of invasion of personal privacy if:
>
> (a)  The person knowingly makes or records a photograph, motion picture, videotape or other visual recording of another person in a state of nudity without the consent of the person being recorded; and
>
> (b)  At the time the visual recording is made or recorded the person being recorded is in a place and circumstances where the person has a reasonable expectation of personal privacy.

The North Dakota statute addressing the possession or distribution of certain photographs or other visual representations, N.D. Cent. Code § 12.1–31–08 (Michie 1997), states in relevant part:

> A person is guilty of a class A misdemeanor if, knowing of its character and content, a person surreptitiously acquires and knowingly possesses or distributes any photograph or other visual representation that exhibits a nude or partially denuded human figure. . .without the individual's written consent. . . . This section does not apply to any book,. . .photograph, video recording, motion picture film, or other visual representation sold in the normal course of business through wholesale or retail outlets that possess

venson is quick to draw our attention to the legislature's inclusion of the "reasonable expectation of privacy" language in the Missouri and Oregon statutes and the legislature's provision of enumerated exceptions to a similar North Dakota statute. Although no cases appear yet to have challenged the constitutionality of any of the three state statutes, Stevenson posits that overbreadth concerns such as those presented in this case have been apparently addressed by the legislatures of the three other states without the judiciary's assumption of a legislative role.

■

¶ 27.    While it is this court's obligation to construe a statute so as to preserve its constitutionality, *Wroten*, 160 Wis. 2d at 233–34, we will not adopt a limiting construction unless the language of the statute is "readily susceptible" to such construction. *Thiel*, 183 Wis. 2d at 532 (quoting *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988)). Here, a broad and expansive interpretation is dictated by the unambiguous language of Wis. Stat. § 944.205(2)(a).

¶ 28.    The State's proposed language would have the effect of adding two elements to the crime set forth in the existing statute: (1) that the person depicted nude have a reasonable expectation of privacy in the place or circumstances in which the person is depicted, and (2) that the person depicted be contemporaneously present at the time of the depiction. However, the State is unpersuasive in its argument that the addition of two elements will provide the necessary cure to the statute's overbreadth.

a valid sales tax permit or used by a licensed attorney, attorney's agent, or any other person obtaining evidence for a criminal investigation or pending civil action, or by a medical professional or a peace officer acting within that person's scope of employment.

¶ 29.   The addition of two elements would significantly alter Wis. Stat. § 944.205(2)(a) and would essentially require us to rewrite the statute. Yet, it is for the legislature to rewrite § 944.205(2)(a) and to craft a clear and precise statute that reconciles the tension between the core concerns of privacy and free expression.

¶ 30.   "[P]recision must be the touchstone of legislation" that implicates the fundamental freedoms underpinning the First Amendment. *Aptheker v. Secretary of State*, 378 U.S. 500, 514 (1964). When the statutory penalty is a criminal felony charge, as it is under Wis. Stat. § 944.205(2)(a), statutory precision is of greater critical significance. The legislative arena represents the appropriate forum for weighing the myriad policy considerations underlying the interplay of fundamental rights. If statutes are to withstand constitutional attacks premised on the infringement of such fundamental rights, they should reflect with utmost clarity and exactitude the reconciliation of divergent policy concerns.

¶ 31.   The State contends that this case differs from prior cases in which we have refused to apply a limiting construction to the statutes or ordinances at issue, because unlike those legislative enactments, Wis. Stat. § 944.205(2)(a) does not express a legislative intent to apply the statute broadly. *See, e.g., Lounge Management*, 219 Wis. 2d at 16 n.3; *Janssen*, 219 Wis. 2d at 366. Although there is no parallel language in § 944.205(2)(a) expressing the intent of broad application, the State acknowledges that likewise there is no expressed intent to narrow the scope of application.

¶ 32.   The State's recognition of this silence underscores the fatal flaw of its argument that we may apply a limiting construction without running afoul of

the legislative purpose. Adopting such a limiting construction would have us substitute our judicial intent for legislative intent.

¶ 33.  In further support of its limiting language, the State cites to numerous cases in which courts have supplied a judicial construction to salvage a statute's constitutionality. *See, e.g., United States v. X-Citement Video*, 513 U.S. 64 (1994); *Hamling v. United States*, 418 U.S. 87 (1974); *State v. Collova*, 79 Wis. 2d 473, 255 N.W.2d 581 (1977). These cases are distinguishable.

¶ 34.  Several of the cases address the addition of a scienter element, which is the rule rather than the exception in our criminal jurisprudence, benefiting from a presumption in criminal statutes. *X-Citement Video*, 513 U.S. at 70; *State v. Alfonsi*, 33 Wis. 2d 469, 476, 147 N.W.2d 550 (1967). Other cases cited by the State permit a limiting construction in the face of either guidance from prior judicial construction of analogous language or the ready availability of language in the plain text of the statute supporting the limiting construction. Here, we have not been asked to supply the element of scienter to Wis. Stat. § 944.205(2)(a), and language is not readily available in the text of the statute to support the State's limiting construction.

¶ 35.  Stevenson maintains that our adoption of the two additional elements advanced by the State would not cure the constitutional infirmity inherent in Wis. Stat. § 944.205(2)(a). He argues that a constitutional defect remains unless the terms "visual representation" and "reproduction" are excised from the statute.

¶ 36.  According to Stevenson, the statute as judicially construed nevertheless criminalizes the drawing of a person in the nude as in the political cartoon

depicting Monica Lewinsky, Linda Tripp, and Ken Starr if the person is depicted in a place where the person has a reasonable expectation of privacy. He also claims that the rewritten statute reaches the photocopying or reproducing of artistic expressions in which the model is depicted in a place of privacy and has not given consent to the reproduction of the original portrait.

¶ 37. Arguably the contemporaneous presence element adequately addresses the political cartoon, subjecting a cartoonist to criminal prosecution only when the cartoon is based on a contemporaneous view of the nude and unconsenting person, not on the artist's imagination. Yet, the term "reproduction" continues to pose a vexing problem for the State.

¶ 38. The commingling of the State's proffered element of required contemporaneous presence and the term "reproduction" set forth in Wis. Stat. § 944.205(2)(a) would render the statute internally inconsistent. To reproduce is to recreate or subsequently produce. By definition, a reproduction is not contemporaneous to the event. Thus, the second element of contemporaneous presence suggested by the State fails to address the constitutional dilemma posed by the inclusion of the term "reproduction." The judicial construction of Wis. Stat. § 944.205(2)(a) advanced by the State would then necessarily require a severance of the problematic term. A severance coupled with an addition of two new elements reflects the considerable degree of the statute's infirmity.

¶ 39. As a proposed solution, the State would have us inject into Wis. Stat. § 944.205(2)(a) implied consent to all future reproductions once a person has voiced consent to the original representation. This simply veers too far by further muddying the waters and

demonstrates the extent of our revision were we to apply a judicial construction.

¶ 40. The extent of revision necessary to save Wis. Stat. § 944.205(2)(a) would require us to adopt the role of the legislature. We decline to do so. Ours is not the proper forum for the lively debate and discourse necessary to reconcile the conflicting demands of the right to privacy and the right of free expression. We leave the drafting of a narrowly tailored statute to the legislature, and we refrain from adopting a judicial construction to cure the overbreadth of Wis. Stat. § 944.205(2)(a). The State has thus failed to satisfy its burden of proving beyond a reasonable doubt that the statute survives constitutional scrutiny.

¶ 41. In sum, we conclude that Wis. Stat. § 944.205(2)(a) on its face is unconstitutionally over-broad because it prohibits protected expression under the First Amendment. Additionally, the statute is not susceptible to a limiting construction by this court. Because Stevenson was convicted under an unconstitutional statute, we reverse the judgment of conviction and remand the cause to the circuit court for re-sentencing on the charge of obstructing an officer.

*By the Court.*—The judgment of the circuit court is reversed and the cause is remanded.

¶ 42. JON P. WILCOX, J. *(dissenting)*. Even if Wisconsin Statute § 944.205(2)(a) (1997–98)[1] poses any danger of unconstitutional overbreadth on its face, the statutory language is readily susceptible to cura-

---

[1] All subsequent references to the Wisconsin Statutes refer to the 1997–98 volumes unless otherwise indicated.

tive judicial construction. I therefore would not strike this statute down on grounds of facial overbreadth.

¶ 43.   Facial challenges to statutes do not succeed when a limiting construction is available. *See Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). The usual duty of courts is to construe statutes "so as to avoid the statutes' potentially overbroad reach, apply the statute in that case, and leave the statute in place." *Osborne v. Ohio*, 495 U.S. 103, 119 (1990). Moreover, when a statute regulates conduct and not just speech, "the scope of the statute does not render it unconstitutional unless its overbreadth is not only 'real, but substantial as well.'" *Id.* at 112 (quoting *Broadrick*, 413 U.S. at 615).

¶ 44.   The general rule of standing is that a defendant cannot attack a statute on the ground that it may be unconstitutional as applied to others. *See State v. Thiel*, 183 Wis. 2d 505, 520, 515 N.W.2d 847 (1994). The overbreadth doctrine properly establishes an exception to this rule, when First Amendment rights are implicated. *See id.* at 520–21. "In the First Amendment context, we permit defendants to challenge statutes on overbreadth grounds, regardless of whether the individual defendant's conduct is constitutionally protected." *Osborne*, 495 U.S. at 112 and n.8. However, statutory invalidation under the overbreadth doctrine is "manifestly, strong medicine" that is meant to be employed only as a last resort. *See Broadrick*, 413 U.S. at 613. Therefore, the court has a duty not to render the entire statute invalid when the language of the statute can be cured by a limiting construction. *See Thiel*, 183 Wis. 2d at 521.

¶ 45.   In a challenge to facial validity, a limiting construction to rehabilitate the statute is permitted when such a reading is "readily available." *See State v.*

*Janssen*, 219 Wis. 2d 362, 378, 580 N.W.2d 260 (1998). Even when First Amendment rights are concerned, if the statute is " 'readily susceptible' to a narrowing construction that would make it constitutional, it will be upheld." *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988)(citations omitted). A narrow construction is the proper way to guard against potential overbreadth in Wis. Stat. § 944.205(2)(a).

¶ 46. The clear aim of the statute under attack is to protect legitimate privacy interests. Though there are no records of floor or committee debate, a letter in the drafting file indicates that the legislature's aim was to prohibit conduct exactly like the defendant's conduct in this case. *See* Letter of Chief of Police of River Falls to State Representative Sheila Harsdorf, dated October 11, 1995, in the Wisconsin Legislative Reference Bureau bill drafting file for 1995 Wis. Act 249. The statute was drafted in direct response to a letter written by the River Falls Chief of Police, which related an incident of the same sort of invasive and secretive visual recording of nude persons that we have in this case.[2] This legislative history establishes that the legislature's intent in enacting Wis. Stat. § 944.205(2)(a) was to protect privacy interests in cases just like the one at hand.

---

[2] More specifically, the incident related in the letter to Representative Harsdorf explained that the young women were foreign exchange students whom the individual was hosting in his residence. They were unaware he was videotaping them while they engaged in their bathroom routines.

This is strikingly similar to the facts in this case. The defendant admits that he secretly positioned himself outside of his ex-girlfriend's house, on the roof of the house and in a tree. From these positions, he videotaped her while she was in the privacy of her bedroom and bathroom.

¶ 47.  The invasive act targeted as criminal behavior in this case is concededly not protected by the First Amendment. Majority op. at ¶ 16. Furthermore, the mere fact of nudity depicted in a visual media is not proscribed by the statute. The conduct described in the act is constitutionally proscribable, and the expressive content of the pictures is not the primary concern of the legislature. Rather, the legislature seeks to proscribe obtaining nude images in a manner that constitutes an intolerable invasion of privacy. *See Erznoznik v. City of Jacksonville,* 422 U.S. 205, 209–10 (1975)(noting that the state's ability " 'to shut off discourse solely to protect others from hearing it is. . .dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner.' ")(quoting *Cohen v. California,* 403 U.S. 15, 21 (1971)). The legislature's intent to criminalize invasions of privacy such as the invasion here is evident in the plain language of the statute, which prohibits capturing an image that depicts nudity "without the knowledge or consent of the person who is depicted nude." Wis. Stat. § 944.205(2)(a).

¶ 48.  The majority argues that the language in the statute is not readily susceptible to an interpretation that criminalizes only this narrow category of behavior. I disagree. The most reasonable interpretation of the statute is not the one suggested by the defense, which characterizes the statute as prohibiting a myriad of conduct protected by the First Amendment. Instead, the most reasonable interpretation of the statute is the one urged by the State, which only criminalizes behavior that constitutes an invasion of privacy.

¶ 49.  Under this reasonable interpretation, we cannot find real and substantial overbreadth. The

overbreadth doctrine should not be used to invalidate the statute merely because " 'in some conceivable, but limited, circumstances the regulation might be improperly applied.' " *Janssen*, 219 Wis. 2d at 373, (quoting *City of Milwaukee v. K.F.*, 145 Wis. 2d 24, 40, 426 N.W.2d 329 (1988)). Especially, we should not attribute to the legislature an intent to apply a statute in situations where an application would yield unreasonable results. *See State v. Timm*, 163 Wis. 2d 894, 899, 472 N.W.2d 593 (Ct. App. 1991). The language in Wis. Stat. § 944.205(2)(a) is "readily available" to a construction that serves the privacy interests contemplated by the legislature.

¶ 50. In 1998 this court invalidated a statute that sought to criminalize "defilement" of the American flag on grounds of overbreadth. *See Janssen*, 219 Wis. 2d at 387. The overbreadth challenge properly succeeded because there was no construction that would make the statute constitutionally permissible: it was "a clear attempt to ban speech and conduct based on its expressive content." *Id.* at 385–86. The legislature's stated intent confirmed as much. *See id.* Here, there is no such impermissible regulation on the basis of expressive content. The statute does not criminalize the visual depiction because it depicts nudity. Instead, it criminalizes securing such depictions by an invasive, secretive method violating privacy interests.

¶ 51. To bolster this understanding of the statute, the State has proposed the following limiting language, which would ensure that the statute only applies when the defendant:

> Takes a photograph or makes a motion picture, videotape or other visual representation or reproduction that depicts nudity without the knowledge

and consent of the person who is depicted nude, *while that person is nude in circumstances where they have a reasonable expectation of privacy*, if the person knows or has reason to know that the person who is depicted nude does not know of and consent to the taking or making of the photograph, motion picture, videotape or other visual representation or reproduction.

Plaintiff-Respondent's Brief at 13–14. Construing the statute in this manner underscores the statute's susceptibility to reasonable interpretation and clarifies the applicable scope of the statute. The language of the statute requiring "knowledge" and "consent," coupled with the legislative history, reflect that protection of privacy is the fundamental concern. The statute is readily susceptible to a limited application: at its core, this statute seeks to protect against invasion of privacy.

¶ 52.   By applying this reasonable interpretation of the statute, the overbreadth concerns fall away. Under this construction, there is no "real" and "substantial" overbreadth when "judged in relation to the statute's plainly legitimate sweep." *See Lounge Management, Ltd. v. Town of Trenton*, 219 Wis. 2d 13, 34, 580 N.W.2d 156 (1998) (quoting *Broadrick*, 413 U.S. at 615). The examples put forth by the defense and the majority to illustrate possible overbreadth are inapposite under this construction of the statute. Models who pose nude have granted consent and, therefore, have no reasonable expectation of privacy. News reporters will not be vulnerable under the statute if their subjects were in full public view where there is no expectation of privacy. Artistic license will not be threatened so long as the depictions are not made while

surreptitiously observing anyone while they were undressed.

¶ 53.   The Supreme Court approved of a similar approach to curing potential overbreadth in *Osborne*, when it approved of the insertion of limiting language into a statute rather than invalidating the statute based on facial overbreadth. *See Osborne*, 495 U.S. at 112. The Supreme Court held that a narrow construction saving a statute from facial invalidation is appropriate when there is a " ' "whole range of easily identifiable and constitutionally proscribable conduct." ' " *See id.* at 112 (quoting *New York v. Ferber*, 458 U.S. 747, 770 n.25 (1982)). The Court determined that an otherwise overbroad statute prohibiting the possession of "nude" photographs of minors could be construed narrowly to avoid "penalizing persons for viewing or possessing innocuous photographs of naked children." *See Osborne*, 495 U.S. at 114. The Supreme Court approved of the Ohio Supreme Court's construction, which interpreted the statute to refer only to " 'nudity [that] constitutes a lewd exhibition or involves a graphic focus on the genitals.' " *Id.* at 113. Thus, the U.S. Supreme Court has confirmed that it is permissible, when trying to reach a curative construction, to add language that is in-step with the statutory purpose of the law. That is precisely what we should do here.

¶ 54.   Limiting this statute to protect only persons who have a reasonable expectation of privacy at the moment a visual depiction is made does not constitute an improper judicial rewriting of the statute. Instead, this interpretation is the most reasonable reading based on the statutory language and legislature's aim. The *Osborne* court upheld an interpretation that did not merely add clarifying language to the statute but also grafted on an element of mental state. *See*

*Osborne*, 495 U.S. at 115. Yet, this was not character-ized as "rewriting" the statute. Following *Osborne*, we should apply a reasonable limiting construction to Wis. Stat. § 944.205(2)(a) to cure any unconstitutional overbreadth.

¶ 55.　The majority distinguishes the *Osborne* line of cases on the grounds that a scienter element is a presumption in criminal law. However, the concept of "reasonable expectation of privacy" is also widespread in criminal law, particularly in Fourth Amendment lit-igation. Reading a "reasonable expectation" requirement into a privacy law is as natural as grafting a scienter element onto criminal laws.

¶ 56.　The State also offers a construction that cures any potential overbreadth relating to the use of the term "reproduction." "Reproduction" can be under-stood to refer only to reproduction of images that were procured without the victim's "knowledge" or "con-sent." In other words, once a person has consented to the obtaining of an image, consent to reproduction of that image would be implied. Such an interpretation of the statute does not require us to "inject" an element of implied consent into the statute. Majority op. at ¶ 39. A reasonable reading of the statute, with its express ref-erence to "consent," suggests that absent an initial invasion of privacy, Wis. Stat. § 944.205(2)(a) was not crafted to apply to subsequent reproduction.[3]

---

[3] The defense argues that this construction does not cure the constitutional defect because the statute might still infringe on an artist's right to draw from imagination a person nude in a place where the person has a reasonable expectation of privacy. I do not think this construction permits such an application, because an individual does not have a right to privacy or a reasonable expectation of privacy in an artist's imagination. On the other hand, the state may constitutionally prohibit an artist

¶ 57. Finally, the defense argues that the limiting construction proposed by the State is improper because it will undermine fair notice. This concern is not without merit; it is important for people to know what the law proscribes. A limiting construction of a statute " 'may be applied to conduct occurring prior to the construction,. . .[but only if] such application affords fair warning to the defendan[t].' " *Osborne*, 495 U.S. at 115 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 491 n.7 (1965)).

¶ 58. In this case, notice concerns do not arise. Reading the statute without the clarifying language proposed by the State would have adequately warned the defendant that sneaking onto a roof and videotaping an unknowing victim in her bathroom is criminal. Accepting the State's limiting construction of this statute therefore would not deprive this defendant of fair notice of what sort of conduct could result in prosecution.

¶ 59. The statute is readily susceptible to a limiting construction to cure it from potential overbreadth. Indeed, such a limiting construction is the most reasonable reading of the statute. Therefore I respectfully dissent.

---

from perching himself outside an individual's bedroom window in order to secretly observe and create a likeness of that person.

The majority also argues that the State's limiting construction renders the statute internally inconsistent, because by definition a person depicted nude in the original need not be contemporaneously present during reproduction of the image. Majority op. at ¶ 38. However, no inconsistency results if "reproduction" is understood to refer only to an image that was initially obtained in a violation of privacy during which the victim was "contemporaneously present."

¶ 60.   I am authorized to state that Justice N. PATRICK CROOKS joins this dissent.