STATE of Wisconsin,
Plaintiff-Respondent,

v.

Mark T. JAHNKE,
Defendant-Appellant.†

Court of Appeals

*No. 2007AP2130–CR. Submitted on briefs March 11, 2008.*
*—Decided December 30, 2008.*

2009 WI App 4

(Also reported in 762 N.W.2d 696.)

† Petition to review denied 3/17/09.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Harold Harlowe* and *Michael Herbert* of *Hal Harlowe & Associates, S.C.*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Freimuth*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Higginbotham, P.J., Dykman and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Mark Jahnke was convicted of secretly videotaping his girlfriend, without her consent, while she was nude. WISCONSIN STAT.

§ 942.09(2)(am)1. (2007–08)[1] makes it a felony to record another person in the nude, without the knowledge and consent of that person, "in a circumstance in which [the recorded person] has a reasonable expectation of privacy." Jahnke argues that his girlfriend did not have a "reasonable expectation of privacy" within the meaning of the statute. We disagree, and affirm the circuit court.[2]

---

[1] This statute has been amended and renumbered since Jahnke was prosecuted. *See* 2007 Wis. Act 118, §§ 2–6. We refer to the numbering in the current version of the statute. For example, Jahnke was prosecuted under Wis. Stat. § 942.09(2)(a) (2005–06), but we refer to the identical current provision, Wis. Stat. § 942.09(2)(am)1. (2007–08). We also discuss § 942.09(2)(am)2. and 3. which, apart from different cross-references necessitated by the renumbering, are identical to the 2005–06 version.

Similarly, the dissent references the current version of the statute. We note that the dissent mentions the locker room situation covered by Wis. Stat. § 942.09(5). That subsection was added when the statute was amended. *See* 2007 Wis. Act. 118, § 6.

[2] This opinion uses the terms "record" and "recording" as shorthand for the more cumbersome phrase "captures a representation" contained in Wis. Stat. § 942.09(1)(a). The statute defines "captures a representation" as "takes a photograph, makes a motion picture, videotape, or other visual representation, or records or stores in any medium data that represents a visual image."

We acknowledge that the terms "record" and "recording" may not be fully descriptive of the acts covered by Wis. Stat. § 942.09(2)(am)1., and we do not intend to limit the definition of "captures a representation." For example, we do not address whether the statute covers a "representation" produced by a device that does not retain representations, but instead provides a live feed only to a remote location.

### Background

¶ 2. The parties stipulated to the following facts. Jahnke and his girlfriend had a three-year, sexually intimate relationship. On April 1, 2006, while in her bedroom, Jahnke's girlfriend knowingly exposed her nude body to Jahnke. He secretly videotaped her without her consent, using a video camera that was concealed under a pile of clothing.

¶ 3. Jahnke's girlfriend later learned about the recording and contacted the police. Jahnke eventually pled guilty to making a nude recording in violation of Wis. Stat. § 942.09(2)(am)1. Jahnke received probation and a withheld sentence.

### Discussion

¶ 4. Jahnke contends that there was an insufficient factual basis to support his guilty plea.[3] There is no dispute regarding the facts or any aspect of the factual-basis requirement. Instead, the question is whether undisputed facts satisfy a statutory standard. The application of statutory language to undisputed facts is a question of law that we decide without deference to the circuit court. *State v. Wilke*, 152 Wis. 2d 243, 247, 448 N.W.2d 13 (Ct. App. 1989). We give statutory language its common, ordinary, and accepted meaning, except that technical or specially defined words or phrases are given their technical or special definitional meaning. *State ex rel. Kalal v. Circuit Court*

---

[3] Before accepting a guilty plea, courts are required "to establish a sufficient factual basis that the defendant committed the crime to which he or she is pleading." *State v. Smith*, 202 Wis. 2d 21, 26, 549 N.W.2d 232 (1996).

*for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We must construe a statute in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and reasonably, to avoid absurd or unreasonable results. *Id.,* ¶ 46.

¶ 5. Jahnke entered a plea to the recording crime defined in WIS. STAT. § 942.09(2)(am)1. That crime has four elements:

(1) the defendant recorded a person in the nude;

(2) the recording is without the nude person's knowledge and consent;

(3) the depicted person was nude in a circumstance in which he or she had a "reasonable expectation of privacy"; and

(4) the defendant knew or had reason to know that the nude person did not know of and did not consent to the recording.

*State v. Nelson,* 2006 WI App 124, ¶ 14, 294 Wis. 2d 578, 718 N.W.2d 168; *see also* WIS JI—CRIMINAL 1396.[4]

---

[4] WISCONSIN STAT. § 942.09(2)(am) provides:

Whoever does any of the following is guilty of a Class I felony:

1. Captures a representation that depicts nudity without the knowledge and consent of the person who is depicted nude while that person is nude in a circumstance in which he or she has a reasonable expectation of privacy, if the person knows or has reason to know that the person who is depicted nude does not know of and consent to the capture of the representation.

2. Makes a reproduction of a representation that the person knows or has reason to know was captured in violation of subd. 1. and that depicts the nudity depicted in the representation cap-

¶ 6. Jahnke contends that the facts do not support the third element, the expectation of privacy element. He reasons that his girlfriend had no reasonable expectation of privacy because she knowingly and consensually exposed her nude body to him while he was secretly videotaping her. In Jahnke's view, the *only* pertinent question for purposes of the privacy element is whether his girlfriend had a reasonable expectation that Jahnke would *view* her nude at the time of the recording.

¶ 7. The State argues that there is a more precise question for purposes of the privacy element that is geared to the specific privacy interest the statute is designed to protect. According to the State, the question is whether the nude person had a reasonable expectation, under the circumstances, that he or she would not be recorded in the nude. We agree with the State.

¶ 8. In *Nelson*, we concluded that "reasonable expectation of privacy" is not a technical or specially defined phrase in the statute. *See Nelson*, 294 Wis. 2d 578, ¶ 19. Rather, we looked to the common meanings of the words "expectation" and "privacy." *Id.* In this case, giving these words their common meaning requires more than simply applying the definition we set forth in *Nelson* because the different factual scenario here leads us to conclude that our *Nelson* definition is incomplete.

---

tured in violation of subd. 1., if the person depicted nude in the reproduction did not consent to the making of the reproduction.

3. Possesses, distributes, or exhibits a representation that was captured in violation of subd. 1. or a reproduction made in violation of subd. 2., if the person knows or has reason to know that the representation was captured in violation of subd. 1. or the reproduction was made in violation of subd. 2., and if the person who is depicted nude in the representation or reproduction did not consent to the possession, distribution, or exhibition.

Accordingly, we first interpret the phrase "reasonable expectation of privacy" with the benefit of our different factual background and then, in ¶¶ 15 to 21, reconcile our interpretation with *Nelson*.

¶ 9. WISCONSIN STAT. § 942.09(2)(am), the recording crime, does not criminalize the *viewing* of a nude person, regardless of the circumstances. As the State points out, at least one other statute, WIS. STAT. § 942.08, our "Peeping Tom" law, addresses live viewing. Rather, the prohibited act is "[c]aptur[ing] a representation." By placing limits on the ability of others to record, the statute protects a person's interest in limiting, as to time, place, and persons, the viewing of his or her nude body. It follows that the pertinent privacy element question is whether the person depicted nude had a reasonable expectation, under the circumstances, that he or she would not be recorded in the nude.

¶ 10. This conclusion is bolstered by the interaction of the recording crime with the subsections in WIS. STAT. § 942.09(2)(am) that prohibit reproducing and distributing recordings. Subsection 2 prohibits reproducing a recording of nudity that the defendant "knows or has reason to know" was recorded in violation of subsection 1. Thus, a prerequisite to a prosecution under subsection 2 is a violation of the recording crime in subsection 1. For example, if Jahnke did not violate subsection 1 when he recorded his girlfriend in the nude, then he could reproduce that recording without violating subsection 2.

¶ 11. Similarly, a violation of subsection 1 is a prerequisite to a prosecution for possessing, distributing, or exhibiting under subsection 3 of WIS. STAT. § 942.09(2)(am). That subsection requires that a defendant must know or have reason to know that the recording was made in violation of subsection 1 or that

the reproduction was made in violation of subsection 2, which, as we have seen, depends on a violation of subsection 1. It follows that, if Jahnke did not violate subsection 1, he could have, if he desired, exhibited and distributed the nude recording of his girlfriend without violating subsection 3.

¶ 12. This interaction with related subsections shows that Jahnke's interpretation produces absurd results. If, as Jahnke urges, the only privacy element question is whether a person has a reasonable expectation that he or she will not be seen nude, then Jahnke was free to reproduce, possess, distribute, and exhibit the nude recording of his girlfriend without violating subsections 2 or 3 because his girlfriend knowingly permitted Jahnke to view her nude in-person when they were in her bedroom together. Under this construction, Jahnke's girlfriend's privacy interest in not being recorded in the nude is left unprotected any time she permits anyone, under any circumstance, to view her nude. If she disrobes in a medical facility and permits medical personnel to view her, such personnel could record her without violating subsection 1 and, of course, later share that recording without violating subsections 2 or 3. It is one thing to be viewed in the nude by a person at some point in time, but quite another to be recorded in the nude so that a recording exists that can be saved or distributed and viewed at a later time.[5]

---

[5] Jahnke gets it wrong when he states in his reply brief:

However, as the State points out [in its appellate brief], distribution of such images [by Jahnke] could be prosecuted under Wis. Stats. [§ 942.09(2)(am)3.]. Since distribution of such images is already prohibited with criminal penalties attached, this court need not reject [Jahnke's] interpretation of the statute in order to achieve protection against such distribution.

¶ 13. Jahnke asks us to consider an exotic dancer hypothetical. He contends that if WIS. STAT. § 942.09(2)(am)1. is interpreted to protect his girlfriend from being recorded, then, absurdly, the statute similarly protects an exotic dancer in a club who consents to being seen by patrons. Jahnke's argument is flawed because it fails to deal with the fact-specific nature of the privacy inquiry. Jahnke mistakenly assumes that persons in his girlfriend's situation and exotic dancers in clubs have the same reasonable expectation that they will not be recorded. However, persons who dance nude before multiple patrons in a club open to the public cannot reasonably have the same expectation with respect to being recorded. At the same time, the fact-specific nature of the inquiry means that some exotic dancers may have a reasonable expectation that they will not be recorded. For example, while not dispositive, a particular club may have a well-known and enforced prohibition on recording. We discern no reason why it is absurd to provide protection to an exotic dancer who, under the circumstances, has an objectively reasonable expectation that he or she will not be recorded in the nude.

---

The State's brief does not say that Jahnke could have been prosecuted if he distributed the recording. Presumably the State made no such assertion because, absent a violation of WIS. STAT. § 942.09(2)(am)1., Jahnke would have been free to distribute the recording.

Also, we acknowledge that it was stipulated that Jahnke made the videotape for his private use only and that he did not share it with others. Still, the fact remains that if there is no initial recording crime, there can be no separate reproduction or distribution crime, and Jahnke would be free to change his mind and distribute the recording.

¶ 14. Therefore, we conclude that the phrase "reasonable expectation of privacy" in Wis. Stat. § 942.09(2)(am)1. means a reasonable expectation under the circumstances that one will not be recorded in the nude.

¶ 15. Jahnke argues that our interpretation conflicts with the definition of "reasonable expectation of privacy" contained in our *Nelson* decision. We disagree.

¶ 16. In *Nelson*, women were secretly videotaped through their bathroom window by a neighbor in a nearby building. *Nelson*, 294 Wis. 2d 578, ¶¶ 1, 5–10. The women did not know they were being recorded and, therefore, could not have consented to the recording. *See id.*, ¶ 10. There, as here, the propriety of the conviction turned on the meaning of "reasonable expectation of privacy." But the similarity ends there.

¶ 17. The primary issue in *Nelson* was whether the words "reasonable expectation of privacy" in Wis. Stat. § 942.09(2)(am)1. should be defined in accordance with Fourth Amendment search and seizure case law. *Id.*, ¶¶ 2, 16–24. More specifically, Nelson argued that, in keeping with Fourth Amendment jurisprudence, there is no reasonable expectation of privacy in something that is in plain view from a place where another person has a right to be. *Id.*, ¶ 22. Applied to him, Nelson argued, "the women in their bathroom were in plain view from Nelson's house, where he had a right to be." *Id.* We declined to define "reasonable expectation of privacy" using its specialized meaning in Fourth Amendment jurisprudence. *Id.*, ¶¶ 22–26. We explained that applying the Fourth Amendment definition was not "coherent or rational" because the balancing of law enforcement interests with privacy interests in Fourth Amendment

333

cases has nothing to do with whether a non-governmental actor may capture representations depicting nudity. *Id.*, ¶¶ 24–25.

¶ 18. It is true that, en route to rejecting Nelson's Fourth Amendment privacy argument, we provided a definition of "reasonable expectation of privacy" under the recording crime statute. The *Nelson* definition does not refer to any expectation with respect to being recorded, but instead asks whether there was a reasonable assumption that one is "secluded from the presence or view of others." We wrote:

> [The statute] requires that the person who is depicted nude is in a circumstance in which he or she has an assumption that he or she is secluded from the presence or view of others, and that assumption is a reasonable one under all the circumstances, meaning that it is an appropriate one under all the circumstances according to an objective standard.

*Id.*, ¶ 21. We agree with Jahnke that if this definition is the only one that applies, then anyone who knowingly exposes his or her nude body to another necessarily relinquishes his or her protection under Wis. Stat. § 942.09(2)(am)1., regardless whether there was a reasonable expectation that the person would not be recorded in the nude. However, in *Nelson*, we did not purport to provide a definition covering all circumstances.

¶ 19. It was reasonable for the women in *Nelson* to believe they could not be *viewed* in the nude, a belief that, under the facts of that case, necessarily included the expectation that they could not be *recorded*. Thus, when we determined whether the women had a reasonable expectation that they were secluded from view, our determination necessarily encompassed whether they had a reasonable expectation that they could not be

recorded in the nude. In that context, the definition we used makes sense because it comports with the evident purpose of the statute of protecting people from being recorded in the nude when they have a reasonable expectation that they will not be recorded.

¶ 20. We may not and do not hold that the *Nelson* definition is incorrect; we only point out that it is an incomplete definition. Indeed, under the "evident purpose" of the statute as set forth in *Nelson* itself, the statute is plainly directed at reasonable expectations vis-à-vis not being recorded. Thus, the definition we adopt today does not conflict with *Nelson*, but rather fulfills the statutory purpose stated in *Nelson*, and yields the same result when applied to the *Nelson* facts.

¶ 21. Finally, we note that the *Nelson* definition, "secluded from the presence or view *of others*," is logically incomplete. No one could seriously argue that, had the women roommates in *Nelson* been nude in their bathroom at the same time, the result would have been different because none of the women had a reasonable expectation that they were "secluded from the presence or view of others," namely, their own roommates. But under Jahnke's narrow interpretation of *Nelson*, the women would have relinquished their expectation of privacy by exposing themselves to each other. This is yet another indication that we did not attempt to provide a full and complete definition of "reasonable expectation of privacy" in *Nelson*.

¶ 22. The dissent contends that our interpretation of Wis. Stat. § 942.09(2)(am)1. renders the "reasonable expectation of privacy" element of this crime superfluous. The dissent acknowledges that § 942.09(2)(am)1. has four elements: (1) the defendant recorded a person in the nude; (2) the recording is without the nude person's knowledge and consent; (3) the nude person is

335

in a circumstance in which he or she has a "reasonable expectation of privacy"; and (4) the defendant knew or had reason to know that the nude person did not know of and did not consent to the recording. The dissent contends, however, that, under our interpretation, anyone who has not consented to being recorded nude (element two) necessarily has a reasonable expectation of privacy (element three), thus rendering element three superfluous. This argument is demonstrably incorrect. For example, a woman might agree to have sex with a man who has told her that he has in the past secretly recorded sexual partners. Even if that woman does not consent to being recorded in the nude, she may have relinquished her reasonable expectation that she will not be recorded. Another example is a person who attends, in the nude, a popular public beach used by people who wear normal swimwear and beach clothing, but does not consent to being recorded. Even if the nude person does not consent to being recorded, he or she may have no reasonable expectation that there will be no recording. Although the absence of consent and an expectation that one will not be recorded nude often go hand in hand, the two are not inseparable companions.

### Conclusion

¶ 23. In sum, we conclude, based on our interpretation of Wis. Stat. § 942.09, that the stipulated facts were sufficient to establish a factual basis for Jahnke's plea. The facts support a finding that Jahnke's girlfriend had a reasonable expectation that she would not be recorded in the nude. Accordingly, we affirm the circuit court.

*By the Court.*—Judgment affirmed.

¶ 24. DYKMAN, J. (*dissenting*). I do not join in the majority's opinion because it is an attempt to avoid the

requirement of *Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997), that "the court of appeals may not overrule, modify or withdraw language from a previously published decision of the court of appeals."[1] The majority acknowledges that it may not hold that the meaning we gave to "reasonable expectation of privacy" in the predecessor to WIS. STAT. § 942.09(2)(am)1. (2007–08)[2] in *State v. Nelson*, 2006 WI App 124, ¶¶ 19–21, 294 Wis. 2d 578, 718 N.W.2d 168, is incorrect, and therefore it cannot use the words "overrule, modify or withdraw." Majority, ¶ 20. Instead, the majority uses the word "incomplete" to avoid the meaning we previously gave to the statute. Majority, ¶ 20.

¶ 25. Thus, if the court of appeals uses the word "incomplete" to differentiate one of our published opin

---

[1] That is not to say that the court of appeals has not discovered ways, such as used in today's majority opinion, to avoid *Cook v. Cook*, 208 Wis. 2d 166, 560 N.W.2d 246 (1997), by using language other than "overrule, modify or withdraw" even though that is the result of the opinion. *See LaCount v. Salkowski*, 2002 WI App 287, ¶ 15, 258 Wis. 2d 635, 654 N.W.2d 295 (distinguishing prior published opinion though facts are identical).

[2] WISCONSIN STAT. § 942.09(2)(am) provides:

Whoever does any of the following is guilty of a Class I felony:

1. Captures a representation that depicts nudity without the knowledge and consent of the person who is depicted nude while that person is nude in a circumstance in which he or she has a reasonable expectation of privacy, if the person knows or has reason to know that the person who is depicted nude does not know of and consent to the capture of the representation.

I refer to the 2007–08 statutes, as does the majority. Majority, ¶ 1 & n.1. The current WIS. STAT. § 942.09(2)(am)1. is identical to the previous § 942.09(2)(a) (2005–06), and thus our interpretation of § 942.09(2)(a) in *State v. Nelson*, 2006 WI App 124, 294 Wis. 2d 578, 718 N.W.2d 168, applies to the current statute.

ions, we can avoid *Cook* in most circumstances. While this is ingenious wordsmithing, it is not the way a hierarchical legal system should operate. Though we are not saying "that was then and this is now," the result is the same.

¶ 26. By not mentioning it, the majority also avoids consideration of another long-held rule of statutory construction. In *Delvaux v. Vanden Langenberg*, 130 Wis. 2d 464, 476, 387 N.W.2d 751 (1986), the court quoted the following passage from *Zimmerman v. Wisconsin Electric Power Co.*, 38 Wis. 2d 626, 633–34, 157 N.W.2d 648 (1968):

> Where a law passed by the legislature has been construed by the courts, legislative acquiescence in or refusal to pass a measure that would defeat the courts' construction is not an equivocal act. The legislature is presumed to know that in absence of its changing the law, the construction put upon it by the courts will remain unchanged; for the principle of the courts' decision—legislative intent—is a historical fact and, hence, unchanging. Thus, when the legislature acquiesces or refuses to change the law, it has acknowledged that the courts' interpretation of legislative intent is correct. This being so, however, the courts are henceforth constrained not to alter their construction; having correctly determined legislative intent, they have fulfilled their function.

¶ 27. It is thus necessary to examine *Nelson* to determine what meaning we gave to the language in Wis. Stat. § 942.09(2)(am)1.; in particular, we must examine the definition we gave to a person's "reasonable expectation of privacy." In *Nelson*, 294 Wis. 2d 578, ¶ 21, we said:

> If we apply the common meanings of "expectation" and "privacy" and the well-established meaning of the

term "reasonable," [the statute] requires that the person who is depicted nude is in a circumstance in which he or she has an assumption that he or she is secluded from the presence or view of others, and that assumption is a reasonable one under all the circumstances, meaning that it is an appropriate one under all the circumstances according to an objective standard. We conclude this is a reasonable construction of "reasonable expectation of privacy" because it employs the common and well-established meanings of the words.

¶ 28. In *Nelson*, we did not purport to give a narrow meaning to the statute, limited to the facts of the case. Instead, we devoted numerous pages of inquiry and analysis to determine the meaning of the phrase "reasonable expectation of privacy" as that term was used in the statute. This was not an offhand comment or a footnote. Instead, it was a successful attempt to define a statute so that future readers of the statute would know what it meant. And we said that this meaning was determined by whether a nude person reasonably assumed that he or she was secluded from the presence or view of others. We had the opportunity to say what the majority says today, but we did not. That is why *Cook* and *Delvaux* require that we follow *Nelson*.

¶ 29. There is another reason the majority has reached the wrong conclusion. The whole purpose of our examination of statutes is to discern what the legislature had in mind when adopting a statute. Here, we must interpret a statute aimed at recording nudity. Private nudity and recording that nudity are, by themselves, benign activities. But the legislature has criminalized various conduct involving both nudity and recording. As explained in *Nelson*, the recording of someone who is nude and has no knowledge or expec-

tation that anyone is not only watching them but recording them is a felony, Wisconsin's most serious category of criminal penalties. But secretly recording nudity in a locker room, a place where nudity is common, consensual, and understood, is a Class B misdemeanor, punishable much less seriously than a felony. *See* WIS. STAT. § 942.09(5). What the majority does is make its own value judgment about recording someone who consents to being viewed nude but objects to being recorded nude. That is not what we addressed in *Nelson*. *Nelson* does not support the majority's conclusion today.

¶ 30. Finally, in order to make its interpretation work, the majority does what *State v. Dibble*, 2002 WI App 219, ¶ 15, 257 Wis. 2d 274, 650 N.W.2d 908, prohibits when the majority repeals part of WIS. STAT. § 942.09(2)(am)1. We explained in *Nelson*, 294 Wis. 2d 578, ¶¶ 27–30, that the legislature had amended a previous version of this statute after the supreme court had found the statute unconstitutional in *State v. Stevenson*, 2000 WI 71, 236 Wis. 2d 86, 613 N.W.2d 90. We noted that the legislature had added the phrase "reasonable expectation of privacy" to the statute to create the statute we now have. *Nelson*, 294 Wis. 2d 578, ¶ 29 & n.5.

¶ 31. We said that, following the legislature's response to *Stevenson*, the statute has four elements: (1) the defendant captured a representation of nudity; (2) the person depicted nude did not know of or consent to the depiction; (3) "the person . . . depicted nude was nude in a circumstance in which he or she had a reasonable expectation of privacy"; and (4) "the defendant knew or had reason to know that the person . . .

340

depicted nude did not know of and did not consent to the [depiction]." *Nelson*, 294 Wis. 2d 578, ¶ 14 (citation omitted).

¶ 32. Under the majority's interpretation, one who has not consented to being recorded nude (element two) will generally have a reasonable expectation of privacy (element three). Majority, ¶ 22 (acknowledging that, under its interpretation, the two elements "often go hand in hand"). The majority's interpretation thus renders element three superfluous. We are to avoid that construction. *Dibble*, 257 Wis. 2d 274, ¶ 15. As we explained in *Nelson*, the addition of "reasonable expectation of privacy" to Wis. Stat. § 942.09(2)(am)1. was intended to have a limiting effect. As such, it must add another element to the statute rather than merely duplicate the element of not consenting to the recording.

¶ 33. The majority denies rendering element three superfluous because there may be a case where a person does not consent to being recorded nude, but lacks a reasonable expectation of not being recorded nude. In the majority's first hypothetical, a woman who consents to sexual activity with a man who admits to having secretly recorded partners in the past, but who does not consent to being recorded, may not have a reasonable expectation of privacy. Thus, the man could secretly record her without violating the statute. To support its interpretation, the majority is forced to posit a hypothetical which is not only unlikely and bizarre, but a reversion to a now-rejected concept that "no" does not always mean "no." Instead of highlighting any difference between elements two and three, the majority's hypothetical illustrates how its interpretation of "reasonable expectation of privacy" has changed that element into an issue of consent, by arguing that a

341

woman who knows of a man's past really cannot claim to have said "no" to the recording. If this hypothetical is accepted, a victim's knowledge of a person's past criminal behavior allows that person the freedom to again victimize, this time with impunity. The victim of secret nude recording should not be told that she should have known better.

¶ 34. The majority's hypothetical also negates the majority's key argument—that Jahnke's conduct is criminalized by the statute because it *must* be covered in order to criminalize a reproduction or distribution of the recording. Again, most people would agree that distribution of a secret recording of private consensual sexual activity ought to be prohibited. But that does not mean that all of it is. *Nelson* explains that some is and some is not. *Nelson* tells us that had Nelson distributed the tape he secretly made of the women in the bathroom, that would be a criminal act. If the man in the majority's first hypothetical is free to record the woman who knows of the man's past recording, is that man also free to distribute the suspect video? If the man in the first hypothetical is free to record and distribute, why is Jahnke not free to do so? The majority's first hypothetical runs aground on its own reef.

¶ 35. The majority's "beach walking while nude" analogy fares no better. What the majority has described is the very type of scenario that caused the supreme court to hold a previous version of WIS. STAT. § 942.09(2)(am)1. unconstitutional in *Stevenson*, 236 Wis. 2d 86. Thus, the majority is really arguing that in situations where the statute clearly does not apply (because the supreme court has said its application would be unconstitutional), elements (2) and (3) could be different. But defendants are not prosecuted where the State knows a prosecution would be unconstitu-

tional. The majority's second analogy proves nothing. In situations where it really matters, such as Jahnke's, and in the real and not hypothetical world, the majority has excised element (3) from *Nelson*. That is as much a modification of *Nelson* as if the majority had overruled *Nelson* in that respect.

¶ 36. The question we must answer is whether the statute prohibits what Jahnke did. The answer is easy. The statute does not, given the meaning we adopted in *Nelson*, which is now a part of the statute itself. *See Wenke v. Gehl Co.*, 2004 WI 103, ¶ 31 & n.17, 274 Wis. 2d 220, 682 N.W.2d 405. Whether a statute should prohibit Jahnke's conduct, or the conduct posited by the various hypotheticals in this case, is a question to be answered legislatively, not judicially. Judges should interpret legislation, not enact it.

¶ 37. The legislature is quite capable of determining what conduct should be criminal, and how that conduct should be punished. If the legislature does not agree with a court's interpretation of legislation, it can easily change the legislation to accord with the legislature's intent. It has done so once with WIS. STAT. § 942.09, and it could do so again, or not, as it determines the proper policy for Wisconsin. I would leave it up to the legislature.

¶ 38. For the reasons stated, I respectfully dissent.